## MARJORIE L. MANSFIELD v. GOPHER AVIATION COMPANY AND ANOTHER.

221 N. W. 2d 135.

August 9, 1974—No. 44181.

*Schermer, Schwappach, Borkon & Ramstead* and *John D. Mariani,* for relator.

*Raymond W. Fitch,* for respondents.

Heard before Sheran, C. J., and Otis, Kelly, Todd, and Yetka, JJ., and considered and decided by the court.

PER CURIAM.

This is a proceeding on certiorari to review a decision of the Workmen's Compensation Commission denying dependency benefits to relator, widow of Austin W. Mansfield, deceased employee.

The claim arises out of an airplane crash in which Mansfield and Dean Carlson, Sr., president of Liv-A-Snaps, Inc., were killed on May 17, 1969. The commission reversed the findings

of the compensation judge who had determined that the death arose out of and in the course of the employment of decedent. We reverse and remand.

Mansfield was employed in November 1968 by Gopher Aviation Company (Gopher) principally as a pilot on a contract mail run. At the time of his employment he was a highly qualified pilot with an air transport rating, instructor's rating, instrument instructor's rating, and multi-engine rating issued by the Federal Aviation Authority. His employment record at the home office of Gopher at Rochester, Minnesota, disclosed these ratings at the time of his employment. Gopher was engaged in the business of selling Beechcraft airplanes and giving flight instructions. Gopher maintained a branch sales department and flight instruction department at Fleming Field in South St. Paul, Minnesota. In December 1968 decedent was transferred to the sales department of Gopher at Fleming Field and occasionally operated charter flights for Gopher.

In February 1969 Liv-A-Snaps, Inc., became interested in purchasing a twin-engine Beechcraft Baron from Gopher. At that time, Dean Carlson, Sr., was president and manager of the company, Dean Carlson, Jr., was assistant manager, and John W. (Bill) Kennedy, a brother-in-law of Dean Carlson, Sr., and a co-pilot with Northwest Airlines, was contemplating doing some flying for the corporation. Contact between Liv-A-Snaps, Inc., and Gopher was made originally between Dean Carlson, Jr., and Arthur Noteboom, a salesman for Gopher at Fleming Field. At the time of the original negotiations, Dean Carlson, Jr., was a student pilot, Dean Carlson, Sr., had a private pilot's license but was not rated for multi-engine planes, and John W. Kennedy had a commercial license but was not rated for light plane, multi-engine.

On March 14, 1969, Dean Carlson, Sr., in his capacity as president of Liv-A-Snaps, Inc., signed a purchase agreement for the airplane in question. The agreement was executed on behalf of Gopher by Arthur Noteboom. The purchase agreement provided

in part: "Gopher Aviation to check-out to solo: Mr. Bill Kennedy, Mr. Dean Carlson, Sr., Mr. Dean Carlson, Jr."

Dean Carlson, Jr., testified before the compensation judge that at the time of the purchase of the aircraft Noteboom was acquainted with the witness' flying license status and that of Dean Carlson, Sr., and Bill Kennedy, and that Noteboom knew that none of them had multi-engine ratings needed to fly the plane being purchased. Dean Carlson, Jr., testified that these ratings would be included in the purchase of the airplane. Noteboom testified on behalf of Gopher that the only agreement originally contemplated was that provided in the contract, namely, to provide solo instruction. However, he admitted that on behalf of the company he modified the agreement subsequent to its execution to include multi-engine rating for Kennedy on the basis that it was relatively easy to qualify him for such a rating because of his flight experience. He denied that similar agreements were extended to Dean Carlson, Sr., or Dean Carlson, Jr. Arthur Hoffman, vice president of Gopher, testified that he knew nothing about any agreements for multi-engine ratings, including the agreement between Noteboom and Kennedy.

Gopher provided Robert Henry, who was employed by Gopher at that time, to instruct Mr. Kennedy. Henry was a qualified FAA instructor and did instruct Kennedy so as to qualify him for multi-engine rating. A final requirement in obtaining this rating is a "recommendation ride." Another instructor properly qualified under FAA regulations must fly with the student pilot to approve his application for rating. Mansfield, obtained by Henry for this service, gave the recommendation ride to Kennedy. Kennedy testified that he offered to pay Mansfield for this service but was advised by Mansfield that there would be no charge as this was part of the purchase price of the plane.

Henry was also giving instructions to Dean Carlson, Sr., at the time. However, on May 1, 1969, he terminated his employment with Gopher and entered the employ of Liv-A-Snaps, Inc., as a pilot for the company. He continued to give instructions to

Dean Carlson, Sr., but received no additional remuneration for this from either Liv-A-Snaps or Gopher. Henry testified that he had made arrangements with Mansfield for him to give a recommendation ride to Dean Carlson, Sr. On May 17, 1969, a Saturday, Mansfield accompanied Hoffman as copilot on a charter flight from Minneapolis to Rochester, returning by commercial airline to Minneapolis. Hoffman testified that at no time did they discuss giving a recommendation ride to Dean Carlson, Sr., on that date.

David Mansfield, the son of decedent, was employed by Gopher as a line attendant at Fleming Field. He testified that on the Saturday in question he received a phone call "from someone" at Gopher in Rochester to notify his father to give a recommendation ride to Dean Carlson, Sr. The source of this call was never determined. In response to this message, contact was established with the deceased at his home where he had gone following his flight from Rochester. He left home and proceeded to Fleming Field where he met Dean Carlson, Sr. The two of them took off from the airport for the purpose of the recommendation ride. The plane crashed and both parties were killed.

The compensation judge determined that decedent's death had arisen out of and in the course of his employment and allowed dependency benefits under the statute to the widow-relator. On appeal to the Workmen's Compensation Commission, a finding of the compensation judge was set aside and a new finding was made determining that the accident did not arise out of and in the course of the employment of decedent. Thereafter, relator petitioned for the right to submit additional evidence consisting of testimony that she had not presented at the original hearing and testimony of Robert Henry and Dean Carlson, Jr., not presented at the original hearing. The commission allowed the additional testimony of relator but refused to allow any additional testimony of Henry or Dean Carlson, Jr. Relator testified as to her recollection of Hoffman appearing at her home sometime after the accident to deliver an insurance check and stating

to her that he wished he had never told decedent to give Carlson, Sr., the recommendation ride. Hoffman denied any recollection of such a conversation. The commission affirmed its previous denial of benefits and the writ of certiorari issued from this court.

In considering this matter, we must determine whether the conclusions of the commission are manifestly and clearly contrary to the evidence, and, further, if the commission abused its discretion in refusing to consider additional testimony of Henry and Dean Carlson, Jr.

The often repeated rule regarding the scope of review by this court is that the findings of the Workmen's Compensation Commission on fact questions will not be disturbed unless consideration of the evidence with permissible inferences which may be drawn therefrom compels or requires reasonable minds to adopt a contrary conclusion. Roman v. Minneapolis St. Ry. Co. 268 Minn. 367, 129 N. W. 2d 550 (1964). If the commission's findings and decision are supported by substantial evidence, the court will not retry the case but rather will affirm the decision reached below. Watkins v. Walker Methodist Residence, 293 Minn. 524, 198 N. W. 2d 524 (1972).

Further, in considering and reviewing a determination by the commission which sets aside the findings of the compensation judge, it is the findings of the commission and not the findings of the compensation judge that are before the court for consideration. Farnam v. Linden Hills Congregational Church, 276 Minn. 84, 149 N. W. 2d 689 (1967).

The commission determined that the accident in question did not arise out of the course of the employment of decedent Mansfield. In the memorandum accompanying its decision, the following appears:

"Based on our review of the entire record, it is our opinion that the weight of the evidence does not establish that W. Mansfield's fatal flight was made under the direction and control of Gopher

and thus we conclude that his death did not arise out of and in the course of his employment with Gopher."

Such a determination seems highly questionable from the facts of this case and the applicable law. The burden of proof is upon the claimant to establish without speculation or conjecture that the injury or death arose out of or in the course of the employment. Funk v. A. F. Scheppmann & Sons Const. Co. 294 Minn. 483, 199 N. W. 2d 791 (1972). In determining this issue, the statute does not require a showing that the activity giving rise to the injury was motivated solely by the employment relationship. It is enough if the desire to serve the employer's purposes was the dominant motive. Sandmeyer v. City of Bemidji, 281 Minn. 217, 161 N. W. 2d 318 (1968). When an employee performs services in consequence of the existence of the employer-employee relationship and as incidental to such employment, he is within the protection of the Workmen's Compensation Act. Koktavy v. City of New Prague, 246 Minn. 550, 75 N. W. 2d 774 (1956).

Further, we have held that the Workmen's Compensation Act is to be liberally construed to afford coverage of all cases reasonably within its purview. Chillstrom v. Trojan Seed Co. 242 Minn. 471, 65 N. W. 2d 888 (1954). In construing the act liberally, this court will not hold that a relationship exists which will defeat compensation if the evidence will reasonably sustain a determination that an employer-employee relationship exists which will permit recovery. Hammes v. Suk, 291 Minn. 233, 190 N. W. 2d 478 (1971).

Applying these standards to the record before us, it would appear that the decision of the commission is questionable. However, we do not reach the ultimate question because we believe, as hereinafter stated, that the record must be more fully developed, thus necessitating a remand.

In denying relator's request for leave to submit the additional testimony of Henry and Dean Carlson, Jr., the commission indicated that the evidence which the affidavits of these gentlemen indicated would be offered was merely cumulative. We find

that the affidavits of the two witnesses were not cumulative and that if evidence consistent with their affidavits were developed in a hearing, it would be extremely important in the final determination of the principal issue.

Consequently, we hold that the commission abused its discretion in refusing to receive the additional evidence offered by Carlson, Jr., and Henry. Therefore, we reverse the decision of the Workmen's Compensation Commission and remand the matter to the commission with instructions to consider and hear the additional testimony of Robert Henry and Dean Carlson, Jr., and at the conclusion of said testimony to issue new findings and conclusions based on the overall record as then before them and in consideration of the law applicable to the facts as determined by them.

Relator is allowed attorneys fees of $400.

Reversed and remanded.

OTIS, JUSTICE (dissenting).

I do not agree that it was an abuse of discretion on the part of the commission to deny relator's motion to submit additional evidence. Nor, in my opinion, was the commission's determination "highly questionable" when it held that the employee's death did not arise out of the course of his employment.

The commission stressed the fact that "Noteboom and Hoffman denied that Carlson, Sr. was to be furnished instructions beyond solo by Gopher as part of the deal." The commission further found:

"* * * We believe that the phone call received by D. Mansfield from Gopher, considered with the record as a whole and considering no recollection of the party speaking, should be given little weight as evidence that someone with authority from Gopher ordered W. Mansfield to give Carlson, Sr. the recommendation or pre-rating flight. There is a question of the admissibility of that phone call as being made by Gopher since D. Mansfield did not place the call and there was no authentication of the party calling."

The commission allowed further testimony by Mrs. Mansfield but denied that of Carlson, Jr., and Henry as cumulative. In an accompanying memorandum, the commission held that the additional evidence did not establish that the employer had arranged for Carlson's test ride to be given by decedent or that it be given at the time it took place. I find nothing in the record which requires us to hold as a matter of law that the commission was not justified in determining that the additional evidence was neither new, significant, nor unavailable at the time of the hearing on the merits. O'Connor v. Schleck, 296 Minn. 484, 206 N. W. 2d 554 (1973). I would affirm the commission's findings and its decision and would hold that evidence supports a finding that there was neither an implied nor an express agreement on the part of the employer to provide Carlson, Sr., with a recommendation ride as a part of the purchase price of the aircraft.

PETERSON, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Otis.