## ROBERT O. UMBREIT AND ANOTHER v. QUALITY TOOL, INC., AND ANOTHER.

225 N. W. 2d 10.

January 3, 1975—No. 44752.

*O'Neill, Burke, O'Neill & Duckstad* and *Jon R. Duckstad,* for relators.

*Carroll, Cronan, Roth & Austin* and *Thomas A. Foster,* for respondents.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Certiorari to review a decision of the Workmen's Compensa-

tion Commission denying permanent partial disability benefits to the heirs of an injured employee who was receiving temporary total disability benefits and who died as a result of an automobile accident unrelated to his employment. Because we find that the death of an employee which was not work-related terminates his right to compensation for permanent partial disability benefits, and there is no statutory provision allowing such disability benefits, whether accrued or not, to be paid to his heirs, we affirm the commission.

On February 15, 1968, 23-year-old Ronnie L. Umbreit, then employed by respondent Quality Tool, Inc., as a punch press operator, caught his hand in the punch press, crushing his right index and middle fingers and resulting in surgical amputation of his index finger. His employer-insurer commenced payment of temporary total disability benefits, which were to continue to be paid through the last week of March. On Wednesday, March 27, 1968, employee was medically examined and certified to return to work the following Monday, April 1, 1968. On Saturday, March 30, 1968, employee was killed as the result of an automobile accident causally unrelated to his employment.

Following a hearing upon a petition for benefits filed by decedent employee's parents, the compensation judge awarded permanent partial disability benefits of $4,692, payable in lump sum to decedent's parents. The award was based upon findings of permanent partial disability of 100 percent to the index finger and 80 percent to the middle finger.[1] On appeal, the Workmen's Compensation Commission vacated the award and denied payment of the disability benefits claimed.

---

[1] The compensation judge's award was computed as the sum of the following amounts: (a) For the amputated index finger, $60 per week (maximum compensation) for 40 weeks under Minn. St. 1967, § 176.101, subd. 3(2), or $2,400; (b) for the 80-percent disabled middle finger, $60 per week for 28 weeks under § 176.101, subd. 3(3), or $1,680; and (c) for simultaneous multiple member impairment, 15 percent of the above benefits under § 176.101, subd. 3(43), or $612.

Even though evidentiary support may be arguably lacking, for the purpose of our disposition we assume it to be factually established that prior to employee's death payments of benefits for the healing period had ceased; the extent of his permanent partial disability was ascertained; and thus, had he lived, his right under Minn. St. 1967, § 176.021, subd. 3, to a lump-sum payment for such disability benefits had accrued. Upon these assumptions, the question presented is whether employee's heirs are entitled to payment of such accrued permanent partial disability benefits when employee died from causes not proximately related to his industrial injury. The governing statutes are Minn. St. 1971, §§ 176.021, subd. 3,[2] and 176.101, subd. 6.[3]

While it is true that the Workmen's Compensation Act is remedial and humanitarian in purpose and is to be given a liberal interpretation in favor of employees, it is also true that the

---

[2] Minn. St. 1971, § 176.021, subd. 3, reads in part: "All employers shall commence payment of the compensation at the time and in the manner prescribed by this chapter without the necessity of any agreement or any order of the commission. * * * [P]ayments shall be made as nearly as may be at the intervals when the wage was payable; provided, however, that payments for permanent partial disability shall be made by lump sum payment * * * without the necessity of any agreement, or order of the commission, upon cessation of payments for the healing period, or as soon thereafter as such disability can be ascertained, unless, upon good cause shown, it is otherwise ordered by the commission. If doubt exists at such time as to the eventual permanent partial disability, payment shall be then made for the minimum permanent partial disability ascertainable in lump sum * * *."

[3] Minn. St. 1971, § 176.101, subd. 6, reads as follows: "In case a worker sustains an injury arising out of and in the course of employment, and during the period of disability caused thereby death results approximately therefrom, all payments for temporary or permanent disability previously made as compensation for such injury are deducted up to a maximum of $17,500 from any compensation due on account of the death, and accrued compensation due to the deceased prior to his death but not paid is payable to such dependent persons or legal heirs as the commission may order, without probate administration."

rights and benefits granted rest solely upon, and are limited by, the statutes creating them. Berard v. LaCoe, 286 Minn. 375, 176 N. W. 2d 74 (1970); Radzak v. Mercy Hospital, 291 Minn. 189, 190 N. W. 2d 86 (1971); Schwartz v. Talmo, 295 Minn. 356, 205 N. W. 2d 318 (1973); Tierney v. Tierney & Co. 176 Minn. 464, 223 N. W. 773 (1929); Peterson v. Thief River Falls Welding Co. 245 Minn. 212, 72 N. W. 2d 75 (1955). As observed in the Tierney case, which we conclude controls our decision, the rights granted fall into two general categories, namely, rights granted to the employee to compensate him for his work-related injury or disability and rights granted to the employee's dependents when death results from a work-related injury. 176 Minn. 465, 223 N. W. 774. Permanent partial disability benefits fall within the former category. They are personal to the injured workman and are designed to compensate him for his loss of earning capacity. Pramschiefer v. Windom Hospital, 297 Minn. 212, 211 N. W. 2d 365 (1973). In the case of scheduled disability benefits for loss of a bodily member under Minn. St. 176.101, loss of earning capacity is conclusively presumed regardless of the emloyee's ability to return to work at the same or greater earnings. Boquist v. Dayton-Hudson Corp. 297 Minn. 14, 209 N. W. 2d 783 (1973). At the time of our decision in Tierney, payment of compensation for permanent partial disability was to be made at intervals approximating the disabled employee's wage payments. Minn. St. 1971, § 176.021, subd. 3, quoted in footnote 2, requires a "lump sum payment" of such benefits "upon cessation of payments for the healing period, or as soon thereafter as such disability can be ascertained, unless, upon good cause shown, it is otherwise ordered by the commission." [4]

This lump-sum-payment requirement was obviously intended

---

[4] Minn. St. 1971, § 176.021, subd. 3, was amended by L. 1974, c. 486, providing for payment of permanent partial disability benefits concurrently with other benefits and making other changes in the law. As the case before us arises under the earlier law, we make no comment on possible application of the amendment to the issues raised here.

to enhance the value of such lost-earning-capacity benefits by giving the employee, rather than the employer or insurer, the immediate use of and control over the total amount of benefits otherwise payable in installments. Clearly, as our recent decisions point out, Minn. St. 1971, § 176.021, subd. 3, was not intended to make such benefits legally synonymous with general damages nor to diminish the basic purpose and objective of such disability benefits to compensate the employee for his personal loss of earning capacity. Pramschiefer v. Windom Hospital, *supra;* Boquist v. Dayton-Hudson Corp. *supra.* That such benefits are personal to the injured employee is further indicated by Minn. St. 176.175, subd. 2, which prohibits the assignment of compensation claims and exempts such claims "from seizure or sale for the payment of any debt or liability."

In view of the statutory purpose and personal nature of permanent partial disability benefits, we hold that the right of the injured employee to such payments terminates when he dies from causes unrelated to his employment. In so holding, we affirm our earlier holding in Tierney v. Tierney & Co. *supra,* and cite its reasoning as persuasive in this case. Further, we perceive no justification for inferring that the legislature, in adopting the lump-sum-payment provision, intended to create a right to such benefits in the dependents or legal heirs of an injured employee who dies from unrelated causes prior to having received the lump-sum payment himself. There simply is no statutory provision for payment of such benefits to legal heirs in such cases. The rights of dependents to survivor benefits where death results from a work-related injury are separate from those of the injured employee. See, Carroll v. State, 242 Minn. 70, 64 N. W. 2d 166 (1954). In Lewis v. Connolly Contracting Co. 196 Minn. 108, 264 N. W. 581 (1936), we declared that the right to such benefits is distinct from and independent of the right of the employee to compensation for his disability and resulting loss of earnings and earning capacity. The claim of dependents for death benefits

is a cause of action expressly created by statute[5] arising only in the event of death of the employee from work-related causes. Tierney v. Tierney & Co. *supra;* Dale v. Shaw Motor Co. 206 Minn. 99, 287 N. W. 787 (1939).

Minn. St. 1971, § 176.101, subd. 6, quoted in footnote 3, read in its entirety, expressly applies only in the event of death from a work-related injury. Nor can it be said that the adoption of the lump-sum provision evinces a legislative intention to extend the rights of dependents or legal heirs under § 176.101, subd. 6, to situations where death occurs from causes unrelated to employment. To so hold would be to confuse the rights of dependents or legal heirs with those of the injured employee as well as to create arguable inequities in the law, as was pointed out in the Tierney case. 176 Minn. 467, 223 N. W. 775. This is so because the scheduled benefits to be awarded to the employee under Minn. St. 176.101 are, in cases of the more serious kinds of injury or member loss, higher in amount than the death benefits awarded to dependents under § 176.111. For example, if a workman loses both hands as a result of a work-related injury, he is entitled to permanent partial disability payments in the amount of 66 2/3 percent of his daily wage for a period of 500 weeks under § 176.101, subd. 3(29). If, however, he dies as a result of the injury, his parents, subject to the period of their joint dependency, are entitled to 45 percent of his daily wage for a period of not to exceed 300 weeks under § 176.111, subds. 14 and 19. In such a case, to award to dependents the lump-sum permanent partial disability benefits which had accrued to the employee when he died from nonwork-related causes would be to award them a greater amount than they would have received by way of dependency death benefits if the employee had died as a result of a work-related injury. Furthermore, under § 176.101, subd. 6, such dependency death benefits are subject to deduction (up to a maximum of $17,500) of all payments for temporary or per-

---

[5] Minn. St. 176.021; 176.101, subd. 6; 176.111.

manent disability paid or accrued to the employee during his lifetime. As was pointed out in Tierney, the fact of this required deduction from death benefits, plus the fact that no statutory provision permits dependents or legal heirs to recover unaccrued disability benefits which would have been paid to the employee had he lived, negates any inference of an intention to allow legal heirs the right to recover either accrued or unaccrued disability benefits where the employee dies from a nonwork-related cause. We conclude that the legislature did not intend the heirs of a deceased employee to recover disability benefits when it provided for lump-sum payment of permanent partial disability benefits under § 176.021, subd. 3.

Affirmed.