RAMON ROZALES v. PEERLESS WELDER, INC., AND ANOTHER.

246 N. W. 2d 851.

October 29, 1976—No. 46610.

*Jardine, Logan & O'Brien* and *Graham Heikes,* for relators.
*Chadwick, Johnson & Bridell* and *John R. Bridell,* for respondent.

Heard before Todd, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Ramon Rozales (employee) incurred an industrial injury while working at Peerless Welder, Inc. (Peerless). The employee's permanent partial disability was determined, but before

any payment therefor was made he died of unrelated causes. The compensation judge and the Workers' Compensation Board held such payment could be recovered by his heirs. We reverse.

The facts were stipulated by the parties and provide:

"In addition to the facts admitted by the employer and insurer in their Joint Answer filed herein with the Workmen's Compensation Commission, it is hereby stipulated and agreed by and between the above named parties, the same being the only parties in interest herein, as follows:

"I

"That on August 23, 1974, the employee herein was certified to return to work and that the employer and insurer herein filed a healing period termination dated August 26, 1974 with the Workmen's Compensation Commission.

"II

"That on November 20, 1974, the employee herein was examined by Dr. Roland C. Birkebak, who on November 25, 1974 submitted a medical opinion to Peerless Welders, Inc., which opinion was filed with the Workmen's Compensation Commission on December 9, 1974, stating the following facts and opinion:
"Dear Sirs:

"This is a follow up note on Mr. Ramon Rozales. He came in to our office on November 20, 1974 for a disability evaluation on the fifth finger of his right hand. He complains of limitation of motion in it. He can work all right, but if he bumps it, it does cause pain. He has increasing pain with cold.

"Examination showed motion of the distal inter-phalangeal joint from thirty-five degrees to eighty degrees. The metarcarpal phalangeal joint and proximal inter-phalangeal joint have normal motion. There is slight sensitivity to the tip of the finger when touched.

"A partial permanent disability of fifty per cent of the fifth finger of the right hand should be given.
"Yours Truly,
"/s/ Roland C. Birkebak, M.D.

which medical report is stipulated hereto by the parties.

"III

"That on December 23, 1974, the employee herein died of an immediate cause of acute peritonitis, as a consequence of a ruptured colon by foreign object; which cause was totally unrelated to his industrial injury of August 9, 1974.

"IV

"That at the time of said injury of August 9, 1974 and at the time of said death of December 23, 1974, the employee herein was unmarried and he was survived by a son, Raymond Rozales, age 23, and daughters, Mary Pieske, age 29, Rosie Patterson, age 27, Frances Hernandez, age 25, and Rita Weldon, age 20.

"V

"That incorporated herein and made a part of this Stipulation is the entire file of the Workmen's Compensation Commission.

"WHEREFORE, the employee, employer and insurer pray for a Findings and Determination in conformity with the foregoing Stipulation."

The compensation judge and commission allowed recovery by the heirs, stating that our decision in Umbreit v. Quality Tool, Inc. 302 Minn. 376, 225 N. W. 2d 10 (1975), was altered by the 1974 amendment to Minn. St. 176.021, subd. 3, which would now permit such payment to the heirs. We disagree.

This court discussed the applicable rule of law in Umbreit v. Quality Tool, Inc. 302 Minn. 376, 380, 225 N. W. 2d 10, 13, which involved an identical factual situation:

"In view of the statutory purpose and personal nature of permanent partial disability benefits, we hold that the right of the injured employee to such payments terminates when he dies from causes unrelated to his employment. * * * Further, we perceive no justification for inferring that the legislature, in adopting the lump-sum-payment provision, intended to create a right to such benefits in the dependents or legal heirs of an injured employee who dies from unrelated causes prior to having received the lump-sum payment himself."

Included within the Umbreit decision was the following footnote (302 Minn. 379, note 4, 225 N. W. 2d 12):

"Minn. St. 1971, § 176.021, subd. 3, was amended by L. 1974, c. 486, providing for payment of permanent partial disability benefits concurrently with other benefits and making other changes in the law. As the case before us arises under the earlier law, we make no comment on possible application of the amendment to the issues raised here."

This case presents the issue of whether the 1974 amendment to Minn. St. 176.021, subd. 3, would alter the result in Umbreit to allow payment to an employee's heirs of a determined but unpaid permanent partial disability benefit when the employee dies of unrelated causes. L. 1974, c. 486, § 1, amending § 176.021, subd. 3, provides:

"All employers shall commence payment of the compensation at the time and in the manner prescribed by this chapter without the necessity of any agreement or any order of the division. Except those of medical, burial, and other non-periodic benefits, payments shall be made as nearly as may be at the intervals when the wage was payable; provided, however, that payments for permanent partial disability shall be made by lump sum payment, and the provisions of section 176.165 shall not apply, without the necessity of any agreement, or order of the division, upon (CESSATION) *termination* of (PAYMENTS FOR) the healing period, or as soon (THEREAFTER) as such disability can be ascertained (, UNLESS, UPON GOOD CAUSE SHOWN, IT IS OTHERWISE ORDERED BY THE DIVISION). If doubt exists at such time as to the eventual permanent partial disability, payment shall be then made for the minimum permanent partial disability ascertainable in lump sum, and further lump sum payment shall be made upon any later ascertainment of greater permanent partial disability. At the time of the tender of any such lump sum payment, the employee shall be furnished with a copy of the medical report upon which such payment is based, together with a statement by the insurer as to whether the tend-

ered payment is for minimum permanent partial disability or final and eventual disability. (NO EMPLOYEE SHALL BE REQUESTED TO SIGN ANY FINAL RECEIPT UNTIL THE WEEKS COVERED BY THE LUMP SUM PAYMENT SHALL HAVE EXPIRED.) *Compensation for permanent partial disability is payable concurrently and in addition to compensation for temporary total disability and temporary partial disability as set forth in Minnesota Statutes, Section 176.101, Subdivisions 1 and 2, and for permanent total disability as defined in Minnesota Statutes, Section 176.101, Subdivision 5; and such compensation for permanent partial disability shall not be deferred pending completion of payment for temporary disability or permanent total disability, and no credit shall be taken for payment of permanent partial disability against liability for permanent total disability. Liability on the part of an employer or his insurer for disability of a temporary total, temporary partial, and permanent total nature shall be considered as a continuing product and part of the employee's inability to earn or reduction in earning capacity due to injury or occupational disease and shall be payable accordingly. Permanent partial disability is payable for functional loss of use or impairment of function, permanent in nature, and payment therefore shall be separate, distinct, and in addition to payment for any other compensation.*" Changes or additions indicated by *italics* deletions by (CAPITALS).

Examination of the statute clearly indicates that the 1974 amendment was a legislative response to our decision in Pramschiefer v. Windom Hospital, 297 Minn. 212, 211 N. W. 2d 365 (1973), where we held that an employee receiving temporary total disability benefits should not be entitled to receive concurrently a lump-sum payment of permanent partial disability benefits. We find no legislative intent to address the problem raised in Umbreit v. Quality Tool, Inc. *supra*, and this case. The workers' compensation law is a substituted remedy created by the legislature and absent a reasonably clear indication of legislative action modifying rights created by the act, this court

must proceed cautiously in attempting to infer legislative intent. The problem presented by the facts of this case should be addressed to the legislature.

Reversed.