Miriam K. KNOBLE, Executrix of the Estate of James K. Knoble, Respondent,

v.

STORER REALTY COMPANY et al., Relators.

No. 46593.

Supreme Court of Minnesota.

June 10, 1977.

Hansen, Dordell & Bradt and Gene P. Bradt, St. Paul, for relators.

Larkin, Hoffman, Daly & Lindgren, Robert J. Hennessey and Robert E. Boyle, Minneapolis, for respondent.

Heard before KELLY, TODD and WINTON, JJ., and considered and decided by the court en banc.

CRANE WINTON, Justice.*

This case originated with an employee's claim petition to recover an award for injuries arising out of and in the course of his employment filed with the Workers' Compensation Commission.[1] The employer and insurer denied liability. After an evidentiary hearing, the compensation judge made an award for temporary total disability, permanent partial disability, and medical and hospital expenses. From that award the employer and insurer appealed. While the appeal was pending, the employee died from causes not related to the injury. Subsequently, the Workers' Compensation Board substituted the employee's widow and executrix as petitioner and entered a decision modifying and confirming the compensation judge's determination. The case comes here upon a writ of certiorari to review the board's decision. This court affirms.

On June 15, 1964, James K. Knoble suffered injuries to his right hip and leg in the course and scope of his employment when the chair in which he was sitting collapsed. The medical expenses he incurred as a result of the mishap were voluntarily paid by the relators.

The situation was otherwise, however, when Mr. Knoble requested compensation benefits and payment of medical expenses following the progressive deterioration of his right hip and its total replacement in a reconstructive surgical procedure performed on December 5, 1972. Maintaining that no causal relationship existed between the 1964 injury and the 1972 surgery, the relators denied all compensation benefits both before and after the operation was performed. Consequently, on September 27, 1974, Mr. Knoble filed his claim petition for 50-percent permanent partial disability of his right leg and medical expense. On February 19, 1975, he filed an amended petition which also included a claim for temporary total disability.

Following a hearing on March 6, 1975, the compensation judge filed his findings and determination on May 8, 1975, awarding Mr. Knoble $2,088 for temporary total disability for the period from December 5, 1972, through October 24, 1973; 110 weeks of permanent partial disability for 50-percent permanent disability of the right leg in the sum of $4,950; interest on $2,088 from December 5, 1972, and on $4,950 from October 25, 1973, to date of payment; and reimbursement for medical expenses in the total amount of $9,751.40. From that determination the relators appealed to the Workers' Compensation Board on May 20, 1975.

Before the matter could be heard and the appeal resolved, Mr. Knoble died on August 9, 1975, from causes not related to his employment.

On January 7, 1976, the Workers' Compensation Board rendered its decision. It substituted Miriam Knoble, executrix of the estate of James K. Knoble, as petitioner and adopted the findings and determination of the compensation judge. In its decision the board (1) determined that the relators "shall pay on behalf of James K. Knoble $4,212.00 representing 93.6 weeks compensation for permanent partial disability at $45.00 per week for compensation accrued and payable to employee during his lifetime, together with 46 and ⅔ weeks temporary total disability at $40.00 per week in the sum of $2,088.00 covering the period of disability from December 5, 1972 thru October 24, 1973, said compensation aggregating $6,320.00"; (2) ordered the relators to pay to the Special Compensation Fund "the appropriate amount * * * for disability payable pursuant hereto" and to pay 6-percent interest on the awarded compensation from the date of filing of the employee's claim petition until the date of payment together with costs and disbursements incurred in the litigation; and (3) directed "that the compensation for disability payable pursuant hereto shall be held in abey-

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

1. Now Worker's Compensation Court of Appeals. L.1976, c. 134, § 78.

ance pending final adjudication of the matter, and subsequent order of the Workers' Compensation Board directing to whom payments shall be made pursuant to M.S. 176.101, Subd. 6."[2]

The board's compensation award differed from the compensation judge's only with respect to the length of the compensable period for permanent partial disability. It shortened the 110-week period to 93.6 weeks to coincide with the span of Mr. Knoble's life beyond October 25, 1973, the commencement date of the period of permanent partial disability. Although the decision of the board on appeal does not include any provision specifically covering Mr. Knoble's medical expenses, the accompanying opinion indicates that the board contemplated payment as ordered by the compensation judge.

Throughout the entire proceeding, the relators have resisted paying compensation relating to the hip-replacement surgery performed in December 1972. The employee's death from causes not related to his employment has provided the relators with yet another reason for avoiding payment of benefits. They now argue that Mr. Knoble's right to disability benefits was personal to him and terminated upon his death inasmuch as the Worker's Compensation Act makes no provision for survival of benefits when the cause of death is not related to employment. In support of that contention they cite and rely upon *Tierney v. Tierney & Co.*, 176 Minn. 464, 223 N.W. 773 (1929), and *Umbreit v. Quality Tool, Inc.*, 302 Minn. 376, 225 N.W.2d 10 (1975).

The respondent maintains that *Tierney* and *Umbreit* do not control the disposition of this case, because, unlike this case, neither involved a situation in which a compensation award had been made to the employee during his lifetime. The further contention is made that when a compensation claim ripens into an award, it becomes a valuable property right which is not extinguished by the employee's death while an appeal is pending.

1. Thus is framed the important threshold issue: To what extent, if any, does an award of disability benefits and medical expense, occasioned by a work-related injury made by a compensation judge to an employee during the latter's lifetime, continue to be enforceable when the employee dies before disposition of the appeal from the compensation award?

Previous decisions of this court do not address themselves directly to that question. Rather are they concerned with rights and benefits resting solely upon the Worker's Compensation Act. They do not deal with the legal effect of an employee's death on a compensation award made to him during his lifetime which, but for the fact that it has been appealed by his employer or its insurer, would presumably have been paid.

■ This court recognizes that the right of an injured employee to permanent partial disability benefits under Minn.St. 176.021, subd. 3, is personal and that death from causes unrelated to employment terminates the right to those benefits whether at the time of death they were unaccrued, *Tierney v. Tierney & Co., supra*, or accrued, *Umbreit v. Quality Tool, Inc., supra*. See, also, *Rozales v. Peerless Welder, Inc.*, Minn., 246 N.W.2d 851 (1976). These cases, however, do not necessarily control the outcome here, for all of them were initiated by petitions filed after the employee's death and none concerned the disposition after death of an award made to an employee during his lifetime. Whether *Tierney* and *Umbreit* govern the disposition of this case depends upon whether there is a ponderable distinction between an unperfected right to disability benefits and a perfected award based on such a right, and, if so, whether that distinction justifies a different result. We conclude that a valid distinction justifying a different result does exist.

As noted, *Tierney, Umbreit,* and *Rozales* were commenced after the employee had died. Here, by contrast, the employee petitioned to recover benefits and in due course received an award for the relief he sought.

2. The board's decision included other provisions not pertinent to this decision.

Had the relators not contested the causal connection of the disability to the original injury and the degree of the claimed permanent partial disability, the award presumably would have been paid without delay during the employee's lifetime.

The difference between a case involving claims asserted following the death of an employee from nonwork-related causes and one initiated by an employee and resulting in an award made during his lifetime seems manifest. The former must fail because the rights asserted were personal to the employee and terminated upon death, while the latter has ripened into an award, the payment of which was deferred only because the employer or its insurer elected to appeal.

While this court does not recede from its previous decisions holding that an employee's right to compensation for work-related injuries is personal and is terminated by death from causes not related to the injuries, it, nevertheless, concludes that those cases are not authority for defeating the claims asserted by the respondent in this action.

These claims emanate from the compensation judge's award to the employee during his lifetime. An "award" has been held to be synonymous with "decision." *Radzak v. Mercy Hospital,* 291 Minn. 189, 192, 190 N.W.2d 86, 89 (1971). This court has also stated that a compensation judge's decision is final unless reversed on appeal. *Barlau v. Minneapolis-Moline P. I. Co.,* 214 Minn. 564, 572, 9 N.W.2d 6, 10 (1943). If the compensation judge's award is to be regarded as a final decision subject only to modification or reversal on appeal, the conclusion follows that to the extent it directs the payment of ascertained medical expenses previously incurred by the employee and disability benefits for periods of time not extending beyond the date of the employee's death, it creates rights which are fixed, certain, and vested and which are subject to defeasance only if that consequence is required by legislative direction. See, *Todeva v. Oliver Iron Mining Co.,* 232 Minn. 422, 429, 45 N.W.2d 782, 788 (1951).[3] Nothing in either the Worker's Compensation Act or previous decisions of this court requires us to hold that the death of an employee extinguishes an award to him of benefits and expenses which do not relate to any period after his death.

It must be acknowledged that Minn.St. 1974, § 176.101, subd. 6,[4] appears to have been the only part of the Worker's Compensation Act addressed to the application of permanent partial disability payments in the event of an employee's death, and it is not addressed to the circumstances of this case.

▆▆▆ After careful consideration, we hold that an unpaid award of benefits and expenses attributable to a work-related injury made to an employee during his lifetime is not extinguished by the death of the employee from causes not related to the injury to the extent that it is fixed in amount and relates to periods which terminated either before or upon the death of the

---

**3.** In *Todeva v. Oliver Iron Mining Co.,* 232 Minn. 422, 430, 45 N.W.2d 782, 788 (1951), this court recognized that an award of accrued and future compensation installments to the widow of a deceased employee was "unique in that it cannot be surrendered by agreement, assigned, or transmitted to the possessor's heirs, and in that it is subject to defeasance for failure of the possessor to remain single or to survive * *." We construe the quoted language to relate to installment payments payable after the event which by the terms of the statute causes the defeasance and not to such payments as had become payable before the event but remained unpaid at the time of its occurrence.

**4.** Minn.St.1974, § 176.101, subd. 6, provided: "In case a worker sustains an injury arising out of and in the course of employment, and during the period of disability caused thereby death results approximately therefrom, all payments for temporary or permanent disability previously made as compensation for such injury are deducted up to a maximum of $17,500 from any compensation due on account of the death, and accrued compensation due to the deceased prior to his death but not paid is payable to such dependent persons or legal heirs as the commissioner of the department of labor and industry, compensation judge, or commission in cases upon appeal may order, without probate administration." (This subdivision was deleted in its entirety by L.1975, c. 359, § 8.)

employee and would have been paid to him during his lifetime had no appeal been taken by the employer.[5] It continues to be valid and enforceable after his death to the extent that benefits and expenses were fixed in amount and relate to periods of time which terminated either before or upon his death. Any other result would be inconsistent with the policy of giving the Worker's Compensation Act a liberal interpretation favoring fulfillment of the purposes for which it was enacted.

■ 2. Relators contend that the rule adopted here contravenes the prohibition in Minn.St. 176.175, subd. 2, against assignment of compensation claims.[6] They argue, in effect, that a nonassignable right cannot survive the death of the person to whom it belongs. This court does not agree with that contention as applied to the facts of this case. Minn.St. 176.175, subd. 2, as its language makes quite obvious, has as its special purpose the protection of claimants from the consequences of their own acts. That purpose has no application in the instant case. Moreover, the statute is addressed to employees' claims, whereas this case concerns an award made by a compensation judge. Even were the statute to be held applicable to an award on the basis that it is nothing more than a perfected claim, this court has adopted the rule that the nonassignability provision of the act does not affect the survival of established rights. *Employers M. L. Ins. Co. v. Empire Nat. B. & T. Co.*, 192 Minn. 398, 256 N.W. 663 (1934). That rule is applicable here. Therefore, we hold that § 176.175, subd. 2,

does not terminate the relators' liability to pay the award.

■ 3. Temporary total disability was awarded for a period spanning 46⅔ weeks from December 5, 1972, through October 24, 1973. The statute governing payment of temporary total disability benefits, Minn.St. 176.101, subd. 1, specifies: " * * * This compensation *shall* be paid during the period of disability * * *." (Italics supplied.) Clearly, that part of the award related to a period of time which terminated before Mr. Knoble's death and created an award legally enforceable by Mr. Knoble during his lifetime, subject only to a final determination of the relators' appeal.

The medical expense aspect of the award stands on a similar footing. All the charges for Mr. Knoble's hospitalization had been ascertained. The only question remaining open was whether those charges were attributable to a work-related injury.

In one respect the award for permanent partial disability differs from the other two awards. Although the 110-week award period had begun to run while Mr. Knoble was still living, it had not terminated on the date of his death.[7] In its decision upholding the compensation judge's award, the board adjusted the compensable period for permanent partial disability so that compensation was awarded only for the time he lived following the onset of the benefit period. By the terms of Minn.St. 176.021, subd. 3, the lump-sum payment for permanent partial disability was payable upon termination of the healing period or as soon as the disability could be ascertained[8] and would

5. The Michigan Supreme Court has come to the same conclusion in cases arising under a statute having somewhat different provisions than those under consideration here. While they are not, therefore, on all fours, they do nevertheless provide a helpful approach to the problem before this court. See, *Siebert v. Northport Point Cottage Owners' Assn.*, 378 Mich. 661, 148 N.W.2d 790 (1967); *Adams v. Sebewaing Brewing Co.*, 347 Mich. 265, 79 N.W.2d 483 (1956); and *Brandner v. Myers Funeral Home*, 330 Mich. 392, 47 N.W.2d 658 (1951).

6. Minn.St. 176.175, subd. 2, provides: "No claim for compensation owned by an injured employe or his dependents is assignable. Ex-

cept as otherwise provided in this chapter, any claim for compensation owned by an injured employe or his dependents is exempt from seizure or sale for the payment of any debt or liability."

7. The period of permanent partial disability began October 25, 1973, and Mr. Knoble died August 9, 1975, some 93.6 weeks after the commencement of this period.

8. Minn.St. 176.021, subd. 3, in so far as it relates to permanent partial disability payments, provides in part: " * * * [P]ayments for permanent partial disability shall be made by lump sum payment * * * upon termina-

have been made to the employee well before his death if relators had not appealed.[9] What the board did, and properly so, was to exercise its discretionary power on appeal to conform the award to the facts. Minn. St.1974, § 176.421, subd. 6(4). As conformed, the award for permanent partial disability has the same status as the awards for temporary total disability and medical expense.

To hold, as relators urge, that the employee's death before final resolution of their appeal extinguishes those rights accords with neither equity nor sound policy. Doing so would create a possibility of defeating otherwise meritorious claims of injured employees through the proliferation of appeals made on possibly tenuous, if not spurious, grounds, thus frustrating the purposes of the Worker's Compensation Act. This court declines to do that.

■ 4. This court also concludes that the Workers' Compensation Board acted properly in substituting Mrs. Knoble as the petitioner and in retaining jurisdiction to direct to whom payments shall be made. Unless relators prevail on their appeal, they are obligated to pay the award to someone. Although the act no longer includes a provision specifically applicable here, Minn.St. 1974, § 176.101, subd. 6, related to the application of temporary or permanent disability payments and provided that they were "payable to such dependent persons or legal heirs as the commissioner of the department of labor and industry, compensation judge, or commission in cases upon appeal may order, without probate administration." That provision affords a reasonable guideline to follow here.

■ 5. Relators contend that the evidence is insufficient as a matter of law to sustain the 50-percent permanent partial

disability finding made by the compensation judge and affirmed by the board. The standard followed by this court in reviewing the board's determination of a controverted fact question requires that it be sustained unless manifestly contrary to the evidence and that its finding not be disturbed unless the evidence and inferences which may permissibly be drawn from the evidence would require a conclusion contrary to that reached by the board. *Anderson v. Jensen,* 289 Minn. 432, 184 N.W.2d 774 (1971); *Jones v. Excelsior Laundry Co.,* 183 Minn. 531, 237 N.W. 419 (1931). Examination of the transcript does not lead to the conclusion that the board's determination of the employee's permanent partial disability was manifestly contrary to the evidence. It must therefore be sustained.

No error is found in the decision of the board on appeal and it is therefore affirmed.

Respondent is allowed the sum of $400 attorneys fees on this appeal.

Affirmed.

SCOTT, Justice (concurring specially).

I agree in the result only, for reasons explained in my separate opinion in *Mattson v. Prospect Foundry, Inc.,* Minn., 255 N.W.2d 381, filed herewith.

YETKA, Justice (concurring specially).

I join in the special concurrence of Mr. Justice SCOTT.

---

tion of the healing period, or as soon as such disability can be ascertained. * * * Compensation for permanent partial disability is payable concurrently and in addition to compensation for temporary total disability * * *; and such compensation for permanent partial disability shall not be deferred pending completion of payment for temporary disability * * *."

9. Minn.St.1974, § 176.421, subd. 6(4), provided: "On an appeal taken under this section, the commission may:

* * * * * *

"(4) make such award or disallowance of compensation or other order as the facts and findings require."