Gwendolyn MATTSON, Widow of Clarence Mattson, Deceased Employee, Relator,

v.

PROSPECT FOUNDRY, INC., et al., Respondents.

No. 46827.

Supreme Court of Minnesota.

June 10, 1977.

Hansen, Dordell & Bradt and Gene P. Bradt, St. Paul, for relator.

Beal, Horner & DeVaughn and James V. Beal, Minneapolis, for respondents.

Heard before KELLY, TODD and WINTON, JJ., and considered and decided by the court en banc.

TODD, Justice.

Clarence Mattson was injured while in the employ of Prospect Foundry, Inc. Surgery was performed. Shortly thereafter, Mattson was found to be terminally ill. He filed a petition for compensation and was awarded medical expenses and temporary total disability. The Workers' Compensation Commission [1] reversed the award on appeal by the employer. Mattson died shortly thereafter. His widow appealed to this court. We affirmed the reversal by the commission which included a future determination of permanent partial disability. *Mattson v. Prospect Foundry, Inc.*, 300 Minn. 531, 219 N.W.2d 435 (1974). The widow subsequently petitioned for such determination and for death benefits, which were granted by the compensation judge. The commission reversed the judge as to death benefits and reduced the award for permanent partial disability. Both the employer and widow seek review of that decision. We affirm the denial of death benefits and reverse the allowance of permanent partial disability award to the widow.

Mattson injured his back, arms, and legs on August 12, 1970, while employed as a laborer at Prospect Foundry, Inc. He underwent surgery on February 8, 1971, to relieve the effects of cervical spondylosis, a condition which was related to the back injury. Shortly thereafter, it was determined that Mattson was suffering from amyotrophic lateral sclerosis, a terminal degenerative disease of the central nervous system, popularly referred to as "Lou Gehrig's disease." The prognosis of this disease is very grave, the victim often given no more than 2 to 3 years to live.

During this period, on April 21, 1971, Mattson filed a claim petition with the Workers' Compensation Commission, claiming temporary total and partial disability, as well as permanent partial disability of an unknown percentage. A short time later, Mattson amended his petition, claiming permanent total disability. On December 15, 1971, a compensation judge awarded Mattson his medical expenses and temporary total disability in excess of $3,000.

The employer filed an appeal with the Workers' Compensation Commission on December 31, 1971, asserting that the compensation judge's determination was contrary to law and unwarranted by the evidence. On December 27, 1972, the commission, with one commissioner dissenting, vacated the decision of the compensation judge and made the following determination:

(1) The commission found that on three occasions Mattson had suffered an injury in the nature of a low back strain which occurred in the course of his employment but that it was unclear from the record whether he was entitled to any compensation for permanent partial disability of the lower part of the back.

(2) The commission determined that Mattson suffered from cervical spondylosis and amyotrophic lateral sclerosis but that neither of these conditions was causally related to Mattson's employment.

(3) The commission found that Mattson's work had aggravated the cervical spondylosis and contributed to his hospitalization and surgery but that neither the spondylosis nor its aggravation was a cause of Mattson's permanent total disability; amyotrophic lateral sclerosis was responsible for that. As compensation for the spondylosis, the commission awarded Mattson (a) medicine and hospitalization; (b) temporary total disability for the period of disability preceding surgery, plus 6 months of additional temporary total disability for the recovery period after surgery; and (c) permanent partial disability resulting from any aggravation of the spondylosis for an

1. Now the Worker's Compensation Court of Appeals. L.1976, c. 134, § 78.

amount to be determined by settlement or subsequent petition and hearing.

(4) The commission found that Mattson's work had not aggravated or accelerated the amyotrophic lateral sclerosis, which was the cause of Mattson's permanent total disability.

Shortly thereafter, on January 9, 1973, Mattson died. After performing an autopsy on him, it was reported therein that he had died of amyotrophic lateral sclerosis, bronchopneumonia, and islet cell adenoma of the pancreas.

On April 19, 1973, counsel for Mattson petitioned this court for a writ of certiorari to review the decision of the Workers' Compensation Commission, stating that its determination was contrary to law and not supported by the evidence.

In *Mattson v. Prospect Foundry, Inc.*, 300 Minn. 531, 219 N.W.2d 435, we affirmed the commission's decision. Included in the affirmance was that part of the commission's decision which awarded Mattson compensation for permanent partial disability in an amount to be determined by settlement, or subsequent petition and hearing.

Since the parties were unable to reach an agreement on a figure for permanent partial disability, Mattson's widow filed another claim petition with the Workers' Compensation Commission, claiming permanent partial disability of 80 to 100 percent. On July 1, 1975, a compensation judge, after a hearing, awarded the wife—

(1) Fifty-percent permanent partial disability or a total sum of of $11,025, finding our decision in *Umbreit v. Quality Tool, Inc.*, 302 Minn. 376, 225 N.W.2d 10 (1975),[2] to have no retroactive effect and to be inapplicable in the present situation since the claim had been reduced to verdict and affirmed by the supreme court; and

(2) $35,000 in dependents' death benefits and $1,000 burial pursuant to Minn.St. 176.-111, subd. 18, and Minn.St.1971, § 176.111, subd. 19, holding that—

"* * * [t]he death of Clarence Mattson was hastened by, aggravated by and accelerated by his work-related activities."

On July 15, 1975, the employer appealed the aforementioned decision to the Workers' Compensation Commission, stating that the compensation judge erred in the award of permanent partial disability benefits and dependency benefits. In a unanimous decision released on April 5, 1976, the Workers' Compensation Board vacated the decision of the compensation judge awarding the widow 25-percent permanent partial disability benefits amounting to $4,687.20, representing the accrued compensation for 74⅖ weeks of permanent partial disability at $63 per week from the end of Mattson's healing period to his death. The board denied the award of dependents' death benefits because Mattson's death was due solely to amyotrophic lateral sclerosis and not related to his employment.

We are presented with two issues:

(1) Whether the decision of the Workers' Compensation Board denying Mattson's widow dependents' death benefits based upon a determination that his death was not causally related to his employment is supported by the evidence.

(2) Whether Mattson's heirs possess a right to accrued but unpaid permanent partial disability benefits of an undetermined amount pursuant to Minn.St. 176.021, subd. 3, following Mattson's death from causes unrelated to his employment.

1. Mattson's heirs assert that the board's determination that his death was not causally related to his employment is unsupported by the evidence. They premise their claim for dependents' death benefits on the assumption that since Mattson's surgery was necessitated by a work-related injury and the surgery unnaturally

2. Approximately 7 months after *Mattson v. Prospect Foundry, Inc.*, 300 Minn. 531, 219 N.W.2d 435 (1974), the decision in *Umbreit v. Quality Tool, Inc.*, 302 Minn. 376, 225 N.W.2d 10 (1975), was released, holding that where an injured employee dies from causes unrelated to his employment, his heirs do not possess a right to the payment of accrued permanent partial disability benefits under Minn.St. 176.-021, subd. 3, and 176.101, subd. 3.

hastened his death from amyotrophic lateral sclerosis, they are eligible for benefits under Minn.St.1974, § 176.111, subd. 19.

■ The general rule concerning judicial review of factual determinations made by the Workers' Compensation Board is that they will not be disturbed when credible evidence is present in the record to support the findings. See, *Mansfield v. Gopher Aviation Co.*, 301 Minn. 36, 221 N.W.2d 135 (1974); *Grgurich v. Sears, Roebuck & Co.*, 301 Minn. 291, 223 N.W.2d 120 (1974). In *Anderson v. Jensen*, 289 Minn. 432, 435, 184 N.W.2d 774, 776 (1971), we stated:

> "* * * We have repeatedly stated that determinations by the commission of controverted questions of fact must be sustained unless such determinations are manifestly contrary to the evidence, and that a finding upon a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly require reasonable minds to adopt a conclusion contrary to the one at which the commission arrived."

Four physicians testified at the hearing concerning the cause of Mattson's death, as well as the percentage of his permanent partial disability. The doctor called on behalf of the employer stated that Mattson's death was unrelated to his employment. In fact, he testified that the amyotrophic lateral sclerosis proceeded exactly as it does in the vast majority of cases and the surgical procedure performed had no effect on the disease.

The three physicians called to testify by Mattson were in substantial agreement that the surgery performed on him accelerated the degenerative process of amyotrophic lateral sclerosis. However, on cross-examination, all three physicians admitted that the progression of the disease in Mattson's case was entirely consistent with the progression in most cases.

■ After reviewing all the medical testimony and a copy of the autopsy, the board determined that Mattson's death was unrelated to his employment and denied his dependents any death benefits. It is the general rule in this state that conflicts of medical opinion must be resolved by the board as trier of fact. *Saholt v. Northwest Airlines, Inc.*, 290 Minn. 393, 188 N.W.2d 772 (1971). Where there is evidence appearing in the record that would sustain the conclusion reached by the board, such decision should not be disturbed on review. See, *Robertson v. Park Brick Finishers*, 300 Minn. 561, 220 N.W.2d 489 (1974); *Johnson v. Armour & Company*, 297 Minn. 510, 210 N.W.2d 247 (1973).

■ After a thorough review of the record in this case and given the aforementioned standards of review, the board's decision denying Mattson's widow dependents' death benefits is affirmed.

■ 2. Consideration of the issue of allowability of permanent partial disability benefits directly confronts this court with its inadvertence in failing to dispose of it on the prior appeal. However, the precise question of the right of Mattson's heirs to collect permanent partial disability benefits was not raised in the prior case. Subsequently, in *Umbreit v. Quality Tool, Inc.*, 302 Minn. 376, 380, 225 N.W.2d 10, 13 (1975), we held that an employee's heirs possess no right to recover accrued but unpaid permanent partial disability benefits when his death is from causes unrelated to his employment:

> "In view of the statutory purpose and personal nature of permanent partial disability benefits, we hold that the right of the injured employee to such payments terminates when he dies from causes unrelated to his employment. In so holding, we affirm our earlier holding in *Tierney v. Tierney & Co.* [176 Minn. 464, 223 N.W. 773 (1929)], and cite its reasoning as persuasive in this case. Further, we perceive no justification for inferring that the legislature, in adopting the lump-sum-payment provision, intended to create a right to such benefits in the dependents or legal heirs of an injured employee who dies from unrelated causes prior to having received the lump-sum payment himself. There simply is no statutory

provision for payment of such benefits to legal heirs in such cases. The rights of dependents to survivor benefits where death results from a work-related injury are separate from those of the injured employee."

See, also, *Rozales v. Peerless Welder, Inc.*, Minn., 246 N.W.2d 851 (1976).

In *Knoble v. Storer Realty Co.*, Minn., 255 N.W.2d 388, filed herewith, we were asked to consider the heirs' eligibility to collect an award of permanent partial disability benefits when the employee dies from causes unrelated to his employment prior to the payment of the award. However, the *Knoble* case was factually distinguishable from our prior decisions because the amount of the permanent partial disability benefits had been ascertained prior to the employee's death. In allowing the heirs to collect the award when its amount has been determined, we held (255 N.W.2d 388):

> "* * * [A]n unpaid award of benefits and expenses attributable to a work-related injury made to an employee during his lifetime is not extinguished by the death of the employee from causes not related to the injury *to the extent that it is fixed in amount* and relates to periods which terminated either before or upon the death of the employee and would have been paid to him during his lifetime had no appeal been taken by the employer." (Italics supplied.)

In the present case Mattson's award of permanent partial disability was unliquidated at the time of his death. Consequently, the exception created in the *Knoble* decision is inapplicable in this case and the rule in *Umbreit v. Quality Tool, Inc., supra,* precludes Clarence Mattson's heirs from recovering the award of benefits.

The decision of the Workers' Compensation Board denying death benefits to Mattson's widow is affirmed. The allowance of any permanent partial disability payment to the widow is reversed.

Neither party shall be allowed costs or disbursements.

Affirmed in part; reversed in part.

SCOTT, Justice (concurring in part, dissenting in part).

I concur with the opinion of the majority as to the denial of death benefits, but dissent as to the denial of permanent partial disability benefits.

It is clear that under our recent decisions in the area of permanent partial disability benefits, beginning with *Umbreit v. Quality Tool, Inc.*, 302 Minn. 376, 225 N.W.2d 10 (1975), such benefits would have to be denied in the present case. This is so because the rule of *Umbreit* prevents the heirs from recovering either accrued or unaccrued disability benefits where the employee dies from a nonwork-related cause. 302 Minn. 382, 225 N.W.2d 14. Furthermore, the limited exception we created to the *Umbreit* rule in *Knoble v. Storer Realty Co.*, Minn., 255 N.W.2d 388, filed herewith, is not applicable here because the award of permanent partial disability benefits to Mattson was not "fixed in amount" prior to his death. It is necessary to review our decisions in this area for the purpose of establishing a consistent rule which can be fairly and equitably applied to future cases.

The seminal case is *Tierney v. Tierney & Co.*, 176 Minn. 464, 223 N.W. 773 (1929). In Tierney, the employee sustained a work-related injury for which he was granted $20 per week for 100 weeks as partial disability benefits.[1] He received this weekly sum until his death from nonwork-related causes 13 weeks later. His wife, as his sole heir, brought suit to collect the remaining 87 weeks of compensation. We stated the issue to be:

> "* * * [W]hether the right of a workman to receive a specified amount weekly for a specified period as compensation for an injury terminates at his death, where he dies before the expiration of the period from causes other than the injury, or whether it survives for the

1. This award would now be paid as a lump sum under Minn.St. 176.021, subd. 3, "upon termination of the healing period, or as soon as such disability can be ascertained."

benefit of either his estate or his dependents." 176 Minn. 465, 223 N.W. 774. We summarized the applicable rule as drawn from the decisions of other jurisdictions as follows:

"* * * While they hold that the beneficiary has a vested right in the instalments which became due and payable in his lifetime and that such instalments, if unpaid, belong to his estate and may be recovered by the representative of the estate, they also hold that he has no vested right in instalments to accrue in the future, and that all rights as to such instalments terminate at his death." 176 Minn. 466, 223 N.W. 774.

We adopted this reasoning as the rule in Minnesota, by holding that the heirs of a worker who dies from nonwork-related causes have no right to recover compensation "unaccrued" at the time of death. 176 Minn. 467, 223 N.W. 775.

The rule of *Tierney* can be stated as follows: When an employee has received an award for what is now termed "permanent partial disability," and then dies from causes unrelated to his injury, his estate may recover accrued benefits, that is, benefits which were due and payable prior to his death, but may not recover unaccrued benefits, that is, benefits which apply to periods after his death. The death of the employee thus serves only to divide the award into two parts, one of which the heirs may recover and the other of which they may not. The right to accrued benefits vests at the moment the award is made, and is not divested by the employee's death. It is a property right passing to the estate of the employee, and can be enforced by his heirs. There is no such vested right in benefits applicable to periods following the employee's death.

The facts of *Umbreit* were considerably different from *Tierney.* In *Umbreit,* the injured employee died from a nonwork-related accident prior even to filing a petition for permanent partial disability benefits. The petition was filed after the employee's death by his parents, and a lump-sum award for permanent partial disability was made by the compensation judge. We found the issue presented to be:

"* * * [W]hether [the] employee's heirs are entitled to payment of such *accrued* permanent partial disability benefits when [the] employee died from causes not proximately related to his industrial injury." (Italics supplied.) 302 Minn. 378, 225 N.W.2d 12.

At the time of the employee's death, his healing period had ended, and thus we stated that "had he lived, his right under Minn. St.1967, § 176.021, subd. 3, to a lump-sum payment for such [permanent partial] disability benefits had accrued." 302 Minn. 378, 225 N.W.2d 12. We relied on *Tierney* in concluding that the employee's heirs had no legal right "to recover *either accrued or unaccrued* disability benefits where the employee dies from a nonwork-related cause" (italics supplied), 302 Minn. 382, 225 N.W.2d 14, and therefore denied the recovery of benefits. The emphasized language is an extension of the *Tierney* rule which I find to be unwarranted.

The rule of *Tierney* correctly applied to the facts of *Umbreit* leads to the same result, but for a different reason which may alter the result reached herein. We did not hold in *Tierney* that the heirs of the employee could never recover *accrued* benefits—we held only that they could not recover *unaccrued* benefits, that is, benefits applicable to periods beyond the date of the employee's death. We did hold in *Tierney* that when an award has been made prior to the death of the employee, he acquires a vested right to payments due and payable before his death, a right which passes to his estate. There are thus two criteria which must be satisfied for heirs to recover unpaid permanent partial disability benefits: (1) the benefits are accrued, in the sense that they are applicable to periods prior to the employee's death, and (2) the right to such benefits vested in the employee prior to his death. This second criterion is satisfied if an award is made in the employee's favor, at any level of the administrative process, prior to his death. The award may be fixed in amount, or may be left for future deter-

mination or stipulation by the parties, but in any event it must be made in some form prior to the employee's death. Once the award is made, the employee acquires a vested right to all accrued benefits—his subsequent death from nonwork-related causes serves only to act as a limitation on the amount recoverable if the award has not yet been paid.

In *Umbreit* there were a few days between the end of healing and the employee's death which would have resulted in accrued permanent partial disability benefits. The right to the accrued benefits, however, had not vested in the employee prior to his death, since no award for such benefits had been made, in any form, prior to the employee's death. Benefits were thus properly denied, but based upon an unfortunate extension of the *Tierney* rule rather than on its direct application.

A similar analysis leads to the same result in our next decision in this area, *Rozales v. Peerless Welder, Inc.*, Minn., 246 N.W.2d 851 (1976). In *Rozales* as in *Umbreit*, the healing period had ended before the employee died from a nonwork-related cause. If the employee qualified for permanent partial disability benefits, some portion of those benefits would have accrued prior to his death. Also as in *Umbreit*, however, no award was made for these benefits until some time after the employee's death. The right to the benefits had therefore not vested in the employee prior to his death, and his heirs acquired no right to recover the accrued benefits. Again, the denial of benefits was proper upon direct application of the *Tierney* rule.

We approached a restatement of the *Tierney* rule in *Knoble v. Storer Realty Co.*, Minn., 255 N.W.2d 388. In *Knoble* the employee received an award for permanent partial disability benefits prior to his death, but the award was not paid to him during his life because of an appeal to the Workers' Compensation Board. We allowed the heirs to recover the accrued benefits under the following rationale:

" * * * [A]n unpaid award of benefits and expenses attributable to a work-related injury made to an employee during his lifetime is not extinguished by the death of the employee from causes not related to the injury to the extent that it is fixed in amount and relates to periods which terminated either before or upon the death of the employee and would have been paid to him during his lifetime had no appeal been taken by the employer." 255 N.W.2d 388.

This in essence reiterates the rule of *Tierney v. Tierney & Co. supra*, but with one addition: The right to accrued benefits does not vest unless the award made prior to the employee's death is "fixed in amount." In the present case, this condition results in a denial of benefits to Mattson's heirs, since the award for permanent partial disability, while initially made prior to Mattson's death, did not become fixed in amount until after his death.

I would decline to continue this condition, and in so doing return fully to the rule of *Tierney* as set out above. To restate the rule: Accrued permanent partial disability benefits may be recovered by the heirs of the employee if unpaid prior to his death, if the right to those benefits was vested in the employee prior to his death by an award made at any level of the administrative process, whether or not fixed in amount at the time it was made. The obvious corollaries are that unaccrued benefits may never be recovered, and accrued benefits may not be recovered if the right to them did not vest in the employee prior to his death.

Application of this rule to the facts of the present case would require affirmance of the Workers' Compensation Board. Its decision awarded recovery of permanent partial disability benefits to Mattson's widow in the amount of $4,687.20, representing payments of $63 per week for the 74⅖ weeks between the end of healing and Mattson's death. The right to such accrued benefits vested in Mattson on December 27, 1972, when the board initially gave him the right to permanent partial disability benefits. Mattson's death 13 days after this decision served only to lessen the amount eventually recoverable as accrued benefits,

but could not divest him or his heirs of the right to recover the benefits.

YETKA, Justice (concurring in part, dissenting in part).

I join in the opinion of Mr. Justice Scott.