Darold ZWIEG (deceased), Respondent,

v.

POPE DOUGLAS SOLID WASTE and
Minnesota Counties Insurance
Trust, Relators,

and

Medicare/Noridian, Blue Cross/Blue
Shield of Minnesota, St. William's
Living Center, Center for Diagnostic
Imaging, Alexandria Clinic, and Re-
gional Diagnostic Radiology, Interve-
nors.

No. A05–799.

Supreme Court of Minnesota.

Oct. 13, 2005.

Luke M. Seifert, Krista Laurich Durrwachter, Quinlivan & Hughes, P.A., St. Cloud, MN, for Relator.

Raymond R. Peterson, McCoy, Peterson & Jorstad, Ltd., Minneapolis, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Justice.

This workers' compensation matter comes before us by certiorari upon the relation of Pope Douglas Solid Waste and Minnesota Counties Insurance Trust to review a decision of the Workers' Compensation Court of Appeals (WCCA) reversing, by 3–2 decision, a denial of additional compensation as a penalty for delayed payment of wage loss benefits. We affirm.

Darold Zwieg worked for Pope Douglas Solid Waste as a household hazardous waste technician. His work involved receiving and sorting household hazardous waste, maintaining storage drums and containers and general maintenance work at the collection facility. On February 11, 2002, Zwieg sustained a compensable right inguinal hernia injury for which he underwent surgery on February 20, 2002. He returned to work on April 2, 2002. The employer and its workers' compensation liability insurer, Minnesota Counties Insurance Trust, accepted liability and paid temporary total disability benefits[1] and medical expenses.[2]

On July 12, 2002, the employee was hospitalized for abdominal pain, eventually identified as an incarcerated right inguinal hernia with a segmental small bowel obstruction which was surgically repaired on July 15, 2002. The employee lived alone and had no one to care for him on a daily basis. Consequently, he recuperated in a nursing home. He was discharged to his own home on September 18, 2002. Because the medical bills "were stacking up," the employee's nephew, Gary Zwieg, acting on behalf of his uncle, inquired about workers' compensation benefits. The employer and insurer told Gary Zwieg that they did not believe the second surgery was related to the work injury and first surgery.

The employee filed a claim petition on May 20, 2003, seeking temporary total disability benefits, medical expenses related to the second surgery and penalties for delayed benefits. The employer and insurer denied the claim and, after obtaining an extension, scheduled an independent medical examination (IME) for November 5, 2003.[3] The examination was postponed due to the employee's illness. On November 23, 2003, the employee passed away from causes unrelated to his employment. Gary Zwieg was appointed personal representative of the employee's estate.

The employer and insurer forwarded copies of the employee's medical records related to his hernia surgeries to Dr. Nolan Segal. By report issued on May 20, 2004, Dr. Segal stated that the second hernia was causally related to the first

---

1. "For injury producing temporary total disability, the compensation is 66–2/3 percent of the weekly wage at the time of injury." Minn.Stat. § 176.101, subd. 1(a) (2004).

2. By statute, an employer is obligated to furnish any medical care that is reasonably required to cure and relieve an injured worker from the effects of a work injury. Minn.Stat. § 176.135, subd. 1 (2004).

3. The filing of a claim petition triggers a 120–day requirement for completing IMEs and filing the IME report. Minn.Stat. § 176.155, subd. 1 (2004). An extension of time for completing the IME and filing the report will be granted upon good cause shown. *Id.*

hernia and repair. The doctor said that had the employee "not sustained the first hernia and subsequent repair, which failed, he would not have developed the second hernia."

The employee's claim came on for hearing before Compensation Judge Catherine A. Dallner on June 11, 2004. At the hearing, the employer and insurer stipulated that the employee was entitled to temporary total disability benefits from February 12, 2002, through September 26, 2002, and related medical expenses. The claim for wage loss benefits from September 27, 2002, through November 23, 2003, and penalties for delayed benefits was still in dispute. Any benefits awarded were to go to the employee's estate.

The compensation judge denied the claim for wage loss benefits after September 26, 2002; awarded a portion of the claimed medical expenses; and awarded partial reimbursement of attorney fees. The compensation judge denied the claim for penalties for delayed payment of temporary total disability benefits from July 12, 2002, through September 26, 2002, where the employer and insurer did not have expert medical opinion on causation until the IME report from Dr. Segal was issued on May 20, 2004.[4]

On appeal, the WCCA reversed the denial of penalties and remanded for further proceedings. *Zwieg v. Pope Douglas Solid Waste*, 2005 WL 890829, at *4 (Minn. WCCA, Mar. 28, 2005). The WCCA agreed that penalties were not payable for delayed benefits prior to the IME report; but by majority decision, the WCCA concluded that after receipt of the IME report, the employer and insurer were obligated to commence payment of benefits within 14 days, as required by Minn.Stat. § 176.221, subd. 1 (2004), or file for an extension. That the employer and insurer neither sought an extension nor commenced payment until sometime after August 17, 2004, the date of the compensation judge's decision, was grounds for an additional award of compensation as a penalty. The dissent concluded that the claim for penalties did not survive the employee's death. The employer and insurer have sought certiorari review under Minn.Stat. § 176.471 (2004).

### I.

It is the intent of the legislature that the Workers' Compensation Act be construed so as to assure the quick and efficient delivery of benefits to injured workers. Minn.Stat. § 176.001 (2004). Prior to 1995, additional awards of compensation as penalties for delayed compensation were discretionary. Minn.Stat. § 176.225 (1994). The 1995 legislative revisions made the penalties mandatory and increased the amount of allowable penalties from 25 percent to 30 percent of the unpaid compensation. Act of May 25, 1995, ch. 231, art. 2, §§ 87, 88, 1995 Minn. Laws 1977, 2062 (codified at Minn.Stat. § 176.225 (2004)).[5]

---

4. The compensation judge noted that Dr. Segal's report was dated May 12, 2004; but as the WCCA pointed out, the report is date-stamped as having been "issued" on May 20 and the copy received by counsel for the employer and insurer is date-stamped as having been received on May 24, 2004.

5. Minnesota Statutes § 176.225 (2004) provides:

> Subd. 1. Upon reasonable notice and hearing or opportunity to be heard, the commissioner, a compensation judge, or upon appeal, the court of appeals or the Supreme Court shall award compensation, in addition to the total amount of compensation award, of up to 30 percent of that total amount where an employer or insurer has:
>
> (a) instituted a proceeding or interposed a defense which does not present a real controversy but which is frivolous or for the purpose of delay; or,

For unreasonably or vexatiously delayed payments, in addition to the total amount of the compensation awarded, the compensation judge shall award a percentage of the unpaid compensation, in an amount up to 30 percent. Minn.Stat. § 176.225, subd. 1. For inexcusable delay, in addition to the compensation awarded, the compensation judge shall award a percentage of the unpaid compensation, in an amount up to 25 percent. Minn.Stat. § 176.225, subd. 5. Here, the WCCA reversed the denial of penalties for the delayed payments after June 7, 2004, which was 14 days after the employer's and insurer's receipt of the IME report.

(b) unreasonably or vexatiously delayed payment; or

(c) neglected or refused to pay compensation; or

(d) intentionally underpaid compensation; or

(e) frivolously denied a claim; or

(f) unreasonably or vexatiously discontinued compensation in violation of sections 176.238 and 176.239.

For the purpose of this section, "frivolously" means without a good faith investigation of the facts or on a basis that is clearly contrary to fact or law.

Subd. 2. To determine whether an employer or insurer is liable for the payment provided by subdivision 1, the division, a compensation judge, or the Workers' Compensation Court of Appeals upon appeal may examine the books and records of the employer or insurer relating to the payment of compensation, and may require the employer or insurer to furnish any other information relating to the payment of compensation.

The right of the division to review the records of an employer or insurer includes the right of the special compensation fund to examine records for the proper administration of section 176.129, Minnesota Statutes 1990, section 176.131, Minnesota Statutes 1994, section 176.132, and sections 176.181 and 176.183. The special compensation fund may not review the records of the employer or insurer relating to a claim under Minnesota Statutes 1990, section 176.131, until the special compensation fund has accepted liability under that section or a final determination of liability under that section has been made. The special compensation fund may withhold reimbursement to the employer or insurer under Minnesota Statutes 1990, section 176.131, or Minnesota Statutes 1994, section 176.132, if the employer or insurer denies access to records requested for the proper administration of section 176.129, Minnesota Statutes 1990, section 176.131, Minnesota Statutes 1994, section 176.132, section 176.181 or 176.183.

Subd. 3. If an insurer persists in an action or omission listed in subdivision 1, or does not permit the examination of books and records, or fails to furnish information as required, the commissioner or the chief administrative law judge shall file a written complaint with the commissioner of commerce. The complaint shall specify the facts and recommend the revocation of the license of the insurer to do business in this state. The Workers' Compensation Court of Appeals may also file a written complaint.

Subd. 4. Upon receipt of a complaint filed under subdivision 3, the commissioner of commerce shall hear and determine the matter in the manner provided by chapter 14. On finding that a charge made by the complaint is true, the commissioner of commerce may suspend or revoke the license of the insurer to do business in this state. The insurer may appeal from the action of the commissioner revoking the license in the manner provided in chapter 14.

Subd. 5. Where the employer is guilty of inexcusable delay in making payments, the payments which are found to be delayed shall be increased by 25 percent. Withholding amounts unquestionably due because the injured employee refuses to execute a release of the employee's right to claim further benefits will be regarded as inexcusable delay in the making of compensation payments. If any sum ordered by the department to be paid is not paid when due, and no appeal of the order is made, the sum shall bear interest at the rate of 12 percent per annum. Any penalties paid pursuant to this section shall not be considered as a loss or expense item for purposes of a petition for a rate increase made pursuant to chapter 79.

## II.

The employer and insurer assert that a deceased employee's heirs are not entitled to penalties as a matter of law. Accrued but unpaid installments of compensation are an asset of the decedent's estate like any other debt. 4 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation* § 89.02 (2005). But in the absence of legislation to the contrary, an award of unaccrued compensation abates. *Id.* § 89.03. The rights of dependents or heirs are separate inchoate rights which become effective upon the death of the employee and are thus governed by the laws in effect on that date. *Borchardt v. Biddick,* 306 N.W.2d 817, 818 (Minn.1981).

General Statutes 1923 § 4274(f), as amended in 1925 [6] and subsequently codified as Minn.Stat. § 176.11(f) (1941), provided that where an employee died from a work-related injury while receiving compensation, "all payments previously made as compensation for such injury shall be deducted from the compensation, if any, due on account of the death." The same subdivision further provided: " 'accrued compensation due to the deceased prior to his death but not paid, shall be payable to such dependent persons or legal heirs as the industrial commission may order without probate administration.' " *Fehland v. City of St. Paul,* 215 Minn. 94, 102, 9 N.W.2d 349, 354 (1943) (quoting statute).

In 1975, the legislature repealed those provisions which allowed for the reduction of death benefits by compensation already paid. Act of June 4, 1975, ch. 359, § 8, 1975 Minn. Laws 1168, 1180. The result was the repeal of Minn.Stat. § 176.101, subd. 6 (the successor provision to Minn. Stat. § 176.11(f) (1941)) in its entirety; [7] and this court held that because of the repeal, those entitled to death benefits (because the employee died from a work-related injury) were no longer entitled to any unpaid accrued workers' compensation. *Lakics v. Lane Bryant Dep't Store,* 263 N.W.2d 608, 610 (Minn.1978).

With regard to cases not involving death benefits (because the employee died from causes unrelated to the work injury), this court held that the right of an injured employee to permanent partial disability under Minn.Stat. § 176.021, subd. 3 (1976), was personal and terminated at the time of death whether the benefits were accrued or unaccrued. *Umbreit v. Quality Tool, Inc.,* 302 Minn. 376, 380–81, 225 N.W.2d 10, 13–14 (1975) (reaffirming *Tierney v. Tierney & Co.,* 176 Minn. 464, 467, 223 N.W. 773, 775 (1929)). Death did not, however, extinguish an unpaid award of compensation made to the employee during his lifetime. *E.g., Knoble v. Storer Realty Co.,* 255 N.W.2d 388, 392–94 (Minn. 1977) (holding that widow was entitled to recover unpaid award of specified amount where it was made prior to death).

Apparently in response to the *Tierney/Umbreit* line of cases, the legislature amended Minn.Stat. § 176.021, subd. 3, so as to provide for the vesting of permanent

6. Act of April 8, 1925, ch. 161, § 2, 1925 Minn. Laws 150–51.

7. Minnesota Statutes § 176.101, subd. 6 (1974), authorized the distribution of benefits to dependents or heirs as follows:

> In case a worker sustains an injury arising out of and in the course of employment, and during the period of disability caused thereby death results proximately therefrom, all payments for temporary or perma-

nent disability previously made as compensation for such injury are deducted up to a maximum of $17,500 from any compensation due on account of the death, and accrued compensation due to the deceased prior to his death but not paid is payable to such dependent persons or legal heirs as the commissioner of labor and industry, compensation judge, or commission in cases upon appeal may order, without probate administration.

partial disability compensation in the employee, his dependents or legal heirs, when death was unrelated to the work injury. Act of May 27, 1977, ch. 342, § 4, 1977 Minn. Laws 697, 700. A 1979 amendment added wage loss payments (temporary total, temporary partial, and permanent total disability) to the provision and deleted the qualifying language precluding an award of permanent partial disability benefits to an employee's dependent when the employee's death was compensable. Act of June 7, 1979, ch. 3, § 30, 1979 Minn. Laws Ex. Sess. 1256, 1271–72.

The statutory provision currently in effect, and also in effect at the time of the employee Zwieg's death, reads in relevant part as follows:

> The right to receive temporary total, temporary partial, or permanent total disability payments vests in the injured employee or the employee's dependents under this chapter or, if none, in the employee's legal heirs at the time the disability can be ascertained and the right is not abrogated by the employee's death prior to the making of the payment.

Minn.Stat. § 176.021, subd. 3 (2004).

In *McDowell v. Parsons Electric Co.*, 62 Minn. Workers' Comp. Dec. 434 (WCCA 2002), the WCCA concluded that an employee's heirs had "no basis or standing to claim penalties for delayed payment of permanent partial disability benefits." *Id.* at 443. This was so, the *McDowell* court reasoned, because Minn.Stat. § 176.021, subd. 3, did not specifically reference penalties. *Id.* at 442. In the matter currently before us, the WCCA upon "further reflection" and by majority decision concluded that penalties for delayed benefits were part of the employee's underlying claim and were therefore vested and payable to the employee's heirs. *Zweig*, 2005 WL 890829, at *5. The WCCA rejected the dissenting member's position that a penalty claim was separate and independent of the employee's claim and one that could not be maintained in the absence of statutory authorization:

> A claim for penalties is not a separate claim but is part of and grows out of the underlying claim for benefits. The right of the heirs to maintain a claim for temporary total disability benefits carries with it a right to maintain a claim for penalties when, as here, the employer and insurer fail to comply with the statute in the payment of temporary total disability benefits.
>
> The purpose of Minn.Stat. § 176.225, subd. 1, is to facilitate the prompt and expedient resolution of disputes and payment of claims. This is good policy whether the claim is one asserted by the employee or his heirs or dependents. The efficient administration of the workers' compensation system is best served by holding an employer and insurer to the standards of Minn.Stat. § 176.225 in all cases. For these reasons and policy considerations, the court overrules its decision in *McDowell*.

*Id.*

In reliance on the *Tierney/Umbreit* line of cases, the WCCA dissent argued that the employee's claim for penalties terminated upon death and that there was no statutory authority allowing the heirs a claim for conduct that occurred after the employee's death:

> The statute does not, however, address the survival of an employee's claim for penalties. Given the statutory and case law history on the issue, I find no grounds to confer upon heirs and dependents the right to benefits not expressly authorized by the legislature. Perhaps more importantly, even if the statute might be read to *imply* the survivability of an employee's penalty claim—and this is doubtful—the conduct giving rise to

the penalty claim that is the subject of the majority's remand *took place about six months after the employee's death.* Thus, what the majority is saying is that heirs and dependents have a totally independent right to seek penalties, even if the employee did not do so or could not have done so. There is simply no legal basis for such a claim under the statute, regardless of the question of survivability.

*Id.* at *6 (Pederson, J., dissenting).

■ That the WCCA divided on the issue demonstrates that reasonable minds can come to differing conclusions. Nevertheless, the penalty for delay in payment of compensation is applied in the form of a percentage addition to the employee's award.[8] Where the penalty is computed as a percentage of the unpaid compensation, we agree with the WCCA majority and hold that penalties for delayed benefits are part of the employee's underlying claim and are therefore vested and payable to the employee's heirs. If we misperceive the intent of the legislature, our misperception is subject to legislative re-examination. We must take the statute as we find it and give it a construction consistent with its purpose of requiring the prompt payment of undisputed benefits without the necessity of litigation.

### III.

■ The employer and insurer also assert that the WCCA exceeded its scope of review in reversing the denial of penalties. When the WCCA reviews a compensation judge's findings of fact, it will affirm those findings unless they are "clearly erroneous and unsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 176.421, subd. 1(3) (2004); *see also Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54, 61 (Minn. 1984). An award of penalties under Minn. Stat. § 176.225 is generally a factual question for the compensation judge. *Maxfield v. Stremel,* 1999 WL 60092, at *5 (Minn. WCCA. Jan. 6, 1999). However, the WCCA has the authority to award a penalty as long as the adverse party has been given reasonable notice and an opportunity to be heard. *Olson v. Midwest Printing Co.,* 347 N.W.2d 43, 47 (Minn.1984). The compensation judge in this case denied the claim for penalties for delayed payment of temporary total disability benefits from July 12, 2002, through September 26, 2002, because the employer and insurer did not have expert medical opinion on causation until May 20, 2004, when the IME report from Dr. Segal was issued. The WCCA agreed but concluded that penalties were warranted for the delay after that date.

Temporary total disability benefits shall be paid "within 14 days of notice to or knowledge by the employer" of a compensable injury. Minn.Stat. § 176.221, subd. 1. If the injured employee has suffered "a new period of temporary total disability which is caused by an old" compensable injury, temporary total disability benefits shall also commence within 14 days of notice of the new period of disability. *Id.* In the latter situation, the employer may file for a 30–day extension in which to investigate the propriety of reinstating benefits. *Id.* Here, the WCCA concluded that where (1) the employer and insurer had notice that the new period of disability was caused by the old compensable injury

---

8. In most instances, penalties assessed against employers or insurers are paid to the appropriate unit of the state. *See* Minn.Stat. § 176.221 (2004). "These penalties generally represent a fine for violations of technical requirements. In a limited number of instances, however, the penalties are payable directly to the employee as punishment for prohibited conduct." *The Minnesota Workers' Compensation Deskbook* § 11.1, at 11–1 (Jay T. Hartman & Thomas D. Mottaz eds., 3d ed., 2001).

by way of the IME report of May 20, 2004, (2) stipulated at the June 11, 2004 compensation hearing that the claimed benefits were payable but (3) did not pay those benefits until after the compensation judge's August 17, 2004 decision, a penalty was "owed for the delay in payment after June 7, 2004." *Zwieg*, 2005 WL 890829, at *4. The WCCA remanded the matter for determination of the amount of the penalty.

The employer and insurer argue that the WCCA exceeded its authority in substituting its own factual findings for those of the compensation judge, but the compensation judge did not consider the delay in payment after the May 20, 2004, IME report. The employer and insurer argue that as a matter of policy, penalties should not be available for failure to pay benefits within 14 days of an IME because an employer may have valid defenses to payment. However, the statute allows for the employer to file for an extension of time in which to investigate and assert those defenses; and that did not occur in this case. Accordingly, we conclude that the WCCA did not exceed its authority in reversing the denial of penalties and remanding for further proceedings.

Affirmed.

Employee is awarded $1,200 in attorney fees.