GILDEA, Chief Justice.
*747 This workers' compensation case asks us to decide whether Auto-Owners Insurance Group ("Auto-Owners") owes interest, penalties, and expenses to the heirs of relator Richard Oseland on underpaid disability benefits. The compensation judge determined that the heirs were entitled to interest from the date of each underpayment, but that neither penalties nor expenses were warranted. The Workers' Compensation Court of Appeals ("WCCA") affirmed the compensation judge's denial of penalties and expenses but held that the heirs were not entitled to interest. Because we agree with the compensation judge's determinations regarding interest, penalties, and expenses, we affirm in part, reverse in part, and remand to the compensation judge for proceedings consistent with this opinion.
FACTS
On January 10, 1980, Richard Oseland sustained a work-related injury while working as a surveyor for Crow Wing County. At that time, Auto-Owners was Crow Wing County's workers' compensation insurer. Auto-Owners accepted liability for Oseland's injury and began paying him benefits. About 9 years later, the Department of Labor and Industry ("the Department") determined that Oseland had become permanently and totally disabled, and Auto-Owners began paying him permanent total disability benefits.
On June 1, 1996, Oseland started receiving retirement benefits from the Public Employees Retirement Association. Auto-Owners then began to deduct the amount of retirement benefits Oseland received from the amount of permanent total disability benefits it paid him. WCCA precedent at the time authorized this deduction,[1] and Auto-Owners continued to pay Oseland permanent total disability benefits, reduced by his retirement benefits, until his death in 2013, at which point his benefits ceased.
On August 13, 2014, we decided Ekdahl v. Independent School District # 213 , 851 N.W.2d 874 (Minn. 2014), and Hartwig v. Traverse Care Center , 852 N.W.2d 251 (Minn. 2014). In these cases, we held that the plain language of the Workers' Compensation Act does not allow insurers to reduce the amount of permanent total disability benefits paid by the amount of public employee retirement benefits employees *748 receive. Ekdahl , 851 N.W.2d at 877-78 ; Hartwig , 852 N.W.2d at 253. In other words, we held that the statute did not permit the reductions that Auto-Owners was taking from its payments to Oseland.[2]
Believing that Ekdahl and Hartwig have retroactive effect, the Department began contacting insurers who may have paid reduced permanent total disability benefits to injured employees. In September 2015, the Department sent Auto-Owners a letter directing it to audit its files and determine whether it had taken an offset for public employee retirement benefits on any of its claims. Auto-Owners began its audit and asked the Department how it should proceed if it found files in which offsets were taken but the employees were deceased. The Department did not respond to this inquiry. After a two-month audit, Auto-Owners identified two files in which offsets were taken, one of which was Oseland's. Auto-Owners informed the Department of these files, noted that both claimants were deceased, and asked the Department to contact it if anything else was required. The Department did not respond to this letter, and Auto-Owners did not follow up.
Seven months later, on June 16, 2016, the Department sent a letter to Auto-Owners stating that it had audited Oseland's claim and determined that Auto-Owners had underpaid Oseland $ 169,177.32 as a result of its offsets. The Department directed Auto-Owners to pay Oseland's estate these underpaid benefits. In response, Auto-Owners hired a forensic accountant to verify the amount of underpaid benefits. The forensic accountant's audit took approximately two months and revealed that the underpaid benefits were approximately $ 10,000 less than what the Department had determined. Auto-Owners sent the results of its audit to the Department on September 7, 2016, and the Department responded that it agreed with the assessment.
During the second audit, Auto-Owners had been in touch with Terrence Oseland-one of Oseland's heirs. After learning that the Department agreed with Auto-Owners' new calculation of underpaid benefits, Auto-Owners emailed Terrence about the results of its audit and requested the name of Oseland's estate, the estate's personal representative, the estate tax identification number, and the estate's address. Terrence did not respond to Auto-Owners' emails.
On November 3, 2016, Oseland's heirs filed a claim petition seeking underpaid benefits and interest. Auto-Owners filed an answer, acknowledging that it owed underpaid benefits to the heirs and stating that it "was ready to issue payment on proper submission of the decedent claimant's estate tax ID number, address, and the personal representative of said estate." Auto-Owners denied that it was liable for any interest on the underpaid benefits.
*749 Because Oseland died without a will, the heirs obtained a decree of descent to establish that they were Oseland's legal heirs.[3] The decree of descent was issued on January 31, 2017, and sent to Auto-Owners on February 13, 2017.
On May 25, 2017, the parties executed a stipulation for settlement. In it, the parties agreed that Auto-Owners would pay the heirs the amount of underpaid benefits its forensic accountant had calculated were due and that the heirs' claims for approximately $ 10,000 in additional underpaid benefits, interest, penalties, and expenses would remain open. Auto-Owners paid the heirs $ 159,001.29 in underpaid benefits on June 5, 2017.
The heirs' outstanding claims proceeded to a hearing before a compensation judge. The compensation judge determined that the heirs were not entitled to additional underpaid benefits, penalties, or expenses but held that the heirs were entitled to interest on the underpaid benefits. In addition, the compensation judge determined that the applicable rate of interest on the underpayments was based on the date of each underpayment. In other words, the applicable interest rate was "the rate set by statute at the time the benefits became due and owing."
The parties cross-appealed the compensation judge's order. The heirs appealed the compensation judge's decision on the applicable interest rate, the denial of their claim for penalties, and the determination that the decree of descent was not a taxable expense. Auto-Owners, on the other hand, appealed the compensation judge's determination that interest began accruing prior to the date that our decisions in Ekdahl and Hartwig were issued.
The WCCA unanimously affirmed the compensation judge's denial of the heirs' claim for penalties and expenses.[4] On the issues related to interest, the court's decision was divided. A three-judge majority determined that the due date for Oseland's underpaid benefits was the statutory deadline set out in Minn. Stat. § 176.1292, subd. 2(d)(3) (2018), and that no interest was owed because Auto-Owners paid the heirs before that statutory deadline had passed. Oseland v. Crow Wing County , No. WC17-6120, 2018 WL 4377144, at *4-7 (Minn. WCCA Aug. 30, 2018).
Two WCCA judges dissented from this part of the court's opinion. Chief Judge Milun dissented from the majority's interest determination, concluding that the compensation judge should be affirmed as to both the date interest accrued and the applicable rate. Judge Quinn also dissented in part, concluding that interest should accrue from the date Ekdahl and Hartwig were decided. Id . at *8-10.
Oseland's heirs sought review of the WCCA decision by a writ of certiorari.[5]
*750 ANALYSIS
In this appeal, we must decide three separate issues: (1) whether Oseland's heirs are entitled to recover interest, and, if so, when that interest began to accrue; (2) whether Oseland's heirs are entitled to recover penalties; and (3) whether Oseland's heirs are entitled to recover expenses. We review questions of law de novo. Reider v. Anoka-Hennepin Sch. Dist. No., 728 N.W.2d 246, 249 (Minn. 2007). And "we will not disturb findings affirmed by the WCCA unless the findings are manifestly contrary to the evidence or unless the evidence clearly requires reasonable minds to adopt a contrary conclusion." Pelowski v. K-Mart Corp. , 627 N.W.2d 89, 92 (Minn. 2001).
I.
We turn first to the issue of interest. The heirs' claim to interest rests on Minn. Stat. § 176.221, subd. 7 (2018). This section of the Workers' Compensation Act states that any payment of compensation "not made when due shall bear interest from the due date to the date the payment is made." Id. In addition, subdivision 7 sets out the rate at which interest accrues. The Legislature has changed this rate several times[6] since adding a statutory interest provision to the Workers' Compensation Act in 1977.[7]
The heirs claim that the underpaid benefits became "due" on the date of each reduced benefit payment and that interest accrued from each of those dates at 8 percent-the interest rate in effect on the date of Oseland's injury. See Minn. Stat. § 176.221, subd. 7 (1980). Auto-Owners argues that the underpaid benefits did not become "due" before it paid the heirs according to the terms of the stipulation for settlement, and thus, no interest is owed. In the alternative, Auto-Owners claims that the underpaid benefits did not become due until Ekdahl and Hartwig were decided. Under this alternative argument, Auto-Owners argues that interest accrued at the rate in effect on the date of each underpayment rather than the date of Oseland's injury.
To resolve the parties' dispute over interest, we must first determine whether any interest accrued on the underpayments. If we answer this question in the affirmative, we must then determine the applicable interest rate.
A.
The question of whether interest accrued on the underpaid benefits hinges on when those benefits were "due" under Minn. Stat. § 176.221, subd. 7.[8] We agree with the compensation judge that the benefits deducted were "due" when each reduced benefit payment was made.
The benefits at issue here were permanent total disability benefits. Under Minn. Stat. § 176.101, subd. 4, permanent total disability benefits "shall be made at the intervals when the wage was payable, as nearly as may be." Auto-Owners complied with this statutory directive and paid Oseland his benefits at the requisite intervals. But with each payment, Auto-Owners reduced *751 the amount paid by the amount Oseland had received in retirement benefits. Under Ekdahl and Hartwig , these reductions were improper, and the amount deducted was therefore "due" when each payment was made. Ekdahl , 851 N.W.2d at 878 ; Hartwig , 852 N.W.2d at 253. As we said in Ekdahl , the offset provision has been part of the statutory regime since 1953, and we have "consistently construed" that provision "to refer to federal social security benefits." 851 N.W.2d at 876-77. In light of this decision, Auto-Owners concedes that principal-the amount of the underpaid benefits-is owed. Interest must then follow.
But Auto-Owners argues that the underpaid benefits did not become "due" until we decided Ekdahl and Hartwig .[9] After all, WCCA precedent permitted the deductions that Auto-Owners made. Accordingly, Auto-Owners contends that the underpaid benefits were not "due" until we overruled the WCCA.[10]
Auto-Owners does not claim, however, that Ekdahl and Hartwig have only prospective effect. In those cases, we held that the plain language of the statute did not permit insurers to reduce disability benefits by the amount of retirement benefits. Ekdahl , 851 N.W.2d at 878 ; Hartwig , 852 N.W.2d at 253. Applying that rule retroactively means that Auto-Owners improperly reduced the amount of Oseland's benefit payments. In essence, Auto-Owners asks us to divorce the principal from the interest in this case because it justifiably relied on the law in effect at the time. But interest for overdue workers' compensation benefits is not a penalty. General Mills, Inc. v. State , 303 Minn. 66, 226 N.W.2d 296, 299 (Minn. 1975) ; see also Fishback v. Am. Steel & Indus. Supply , 77 Minn. Workers' Comp. Dec. 269, 279 (WCCA 2017) ("Interest is not a penalty nor is it based on fault."). Instead, it is " 'an incident to the debt that bears it-a rent that the debtor pays for the use of his creditor's money.' " Bourdeaux v. Gilbert Motor Co. , 220 Minn. 538, 20 N.W.2d 393, 396 (Minn. 1945) (quoting Brewster v. Wakefield , 1 Minn. 352, 355 (1857), rev'd on other grounds , 63 U.S. 22 How. 118, 16 L.Ed. 301 (1859) ); see also General Mills, Inc. , 226 N.W.2d at 299 ("We have repeatedly recognized that interest is not a penalty, but rather is the payment of a reasonable sum for the loss of use of money."). Thus, if the reductions taken before Ekdahl and Hartwig were improper and those amounts must be reimbursed, as Auto-Owners concedes, interest on those amounts necessarily follows.[11]
*752 The WCCA reached a different result. To do so, the WCCA majority articulated a new three-part test for determining when underpaid benefits are due. The due date under this test, according to the WCCA, was established by a deadline included in Minn. Stat. § 176.1292, the statute enacted by the Legislature after we decided Ekdahl and Hartwig . Because Auto-Owners reimbursed the heirs by the deadline in this statute, the WCCA held that the heirs were not entitled to interest. See 2018 WL 4377144, at *6. Neither party urges us to adopt this approach, and we decline to do so because the WCCA's rule is not consistent with the plain language of the statute.[12]
This statute was enacted in 2017 following Ekdahl and Hartwig . Act of May 30, 2017, ch. 94, art. 4, § 1, 2017 Minn. Laws 746, 797 (codified as Minn. Stat. § 176.1292 (2018) ). The Department advocated for the enactment of section 176.1292 because it believed that Ekdahl and Hartwig had retroactive effect and that, without legislative incentives, injured employees would be forced to engage in protracted litigation to get compensation for their underpaid benefits. Section 176.1292 provides those legislative incentives. Under section 176.1292, insurers do not have to repay the amounts they owe to the Special Compensation Fund as a result of Ekdahl and Hartwig if they pay employees and their heirs the underpaid benefits they are owed by certain dates. See id. , subd. 2.[13]
The plain language of section 176.1292 does not modify the rights between insurers and employees. See id. , subd. 6 (explaining that the statute "does not preclude *753 any employee, dependent, or legal heir from pursuing additional benefits," beyond those incentivized by the statute, and explicitly imagining that employees, dependents, and legal heirs will "pursue[ ] additional benefits, claims, or penalties related to the benefits paid or payable under" the statute). Instead, the statute grants insurers relief only from potential claims that could be asserted by the Special Compensation Fund. See id. , subds. 3-4. Accordingly, the WCCA erred in using Minn. Stat. § 176.1292 to set the due date for Oseland's underpaid benefits.
Based on our analysis, we hold that Oseland's offset benefits were due under Minn. Stat. § 176.221, subd. 7, on the date of each underpayment and, therefore, bear interest from those dates.
B.
Having concluded that the underpaid benefits must bear interest from the date of each underpayment, we must now determine at what rate this interest accrued. As discussed above, the Legislature sets the rate at which interest accrues in Minn. Stat. § 176.221, subd. 7 but has amended this rate several times over the time period relevant to this case. The heirs argue that the version of section 176.221 in effect on the date of Oseland's work-related injury should apply. They assert that Oseland had a vested right in the interest rate in effect on the date of his injury and later amendments to the workers' compensation interest statute cannot retroactively alter that rate. Auto-Owners, on the other hand, argues that "interest should be calculated based upon the applicable interest rate of the calendar year during which the debt became due ... rather than the interest rate in effect on [Oseland's] date of injury." Auto-Owners admits that the entitlement to statutory interest depends on the statute in effect on the date of the injury. In other words, if Oseland had been injured before the first workers' compensation interest statute was enacted in 1977,[14] he would not be entitled to recover statutory interest at all. But Auto-Owners contends that the right to a particular interest rate does not vest until there has been an underpayment. It is the "underpayment of benefits [that] creates the claim for interest, and thus, the applicable interest rate should be the rate in effect on the date of the underpayment." We agree with Auto-Owners.
We have never addressed what interest rate should apply when interest is owed under Minn. Stat. § 176.221, subd. 7. But for over 30 years, the WCCA has held that the applicable interest rate is the one in effect on the date an employer fails to pay compensation that is due, rather than the rate in effect on the date of the employee's injury. See Roepke v. Rice Cty. 66 Oil , 34 Minn. Workers' Comp. Dec. 90, 91 (WCCA 1981). Although the general rule is that the rights and benefits in effect on the date of an employee's injury control, the WCCA reasoned that this rule "is based upon the fact that the injury is the act which create[s] the rights or the cause of action." Id. at 90. But for interest claims, "[t]he injury is not the act which create[s] the right to interest. It is a prerequisite to the creation of that right, but does not create the right or the cause of action." Id. Because interest becomes due as the result "of a subsequent act, namely, the withholding of benefits due, by the employer and insurer," the WCCA concluded that the interest rate in effect at the time the payment is due is the appropriate rate. Id. at 91.
Our jurisprudence on workers' compensation death benefits relies on similar *754 logic. We have repeatedly held that the rights of dependents to receive death benefits "are separate inchoate rights which become effective upon the death of the employee." Zwieg v. Pope Douglas Solid Waste , 704 N.W.2d 752, 756 (Minn. 2005) ; see also Borchardt v. Biddick , 306 N.W.2d 817, 818 (Minn. 1981) ; Carroll v. State , 242 Minn. 70, 64 N.W.2d 166, 174 (Minn. 1954). Because these rights do not become effective until the date of the employee's death, they are governed by the laws in effect on that date rather than the laws in effect at the date of the employee's injury. Borchardt , 306 N.W.2d at 818. In other words, the rights of dependents to receive death benefits do not "become fixed [until] the time of the death," Warner v. Zaiser , 184 Minn. 598, 239 N.W. 761, 762 (Minn. 1931), and intervening statutes enacted after the date of injury and in effect at the date of death control, Carroll , 64 N.W.2d at 174.
A similar situation is presented by a claim for statutory interest under the Workers' Compensation Act. Like the right of an injured worker's dependents to receive death benefits, the right to recover interest is contingent on an event other than the injury. In the death-benefits context, the other event is the injured worker's death, and in the interest context, the other event is the insurer's non-payment. In both situations, the contingent event gives rise to the liability; accordingly, both should be "governed by the laws in effect on that date." Borchardt , 306 N.W.2d at 818. We therefore adopt the rule from the WCCA, see Roepke , 34 Minn. Workers' Comp. Dec. at 91, that the interest rate to be applied is the rate in effect when the payments were due.[15]
The heirs cite to a number of WCCA cases to support their argument that the interest rate in effect on the date of Oseland's injury controls. These cases are distinguishable because they do not resolve the issue presented here. See Charley v. FMC Corp. , 58 Minn. Workers' Comp. Dec. 637, 638-40 (WCCA 1998) (analyzing the adjustment of benefits section of the Workers' Compensation Act- Minn. Stat. § 176.645 -not the interest statute); Hop v. N. States Power Co. , 56 Minn. Workers' Comp. Dec. 73, 75-78 (WCCA 1996) (discussing whether an employee was entitled to recover statutory interest at all, not the particular interest rate that should apply), summarily aff'd , 560 N.W.2d 92 (Minn. 1997) ; Bassal v. Brown Welding , 48 Minn. Workers' Comp. Dec. 38, 44 (WCCA 1992) (same), summarily aff'd , 495 N.W.2d 207 (Minn. 1993).[16]
*755 Based on our analysis, we hold that interest owed under Minn. Stat. § 176.221, subd. 7, accrues at the statutory rate in effect at the time the payment is due. In this case, each offset that Auto-Owners took bears interest at the rate in effect during the calendar year in which it was taken, making the applicable interest rate variable over the course of Auto-Owners' 17 years of underpayment. On remand, the compensation judge must calculate the interest owed as directed in this opinion.
II.
We next consider whether the heirs are entitled to penalties under Minn. Stat. § 176.225 (2018). This statute requires a compensation judge or appellate court to award a penalty if an employer or insurer has, among other things, "unreasonably or vexatiously delayed payment." Id. , subd. 1(2). Under subdivision 1, this penalty can be up to 30 percent of the total compensation. Id. Additionally, under subdivision 5, if the "employer is guilty of inexcusable delay in making payments, the payments which are found to be delayed shall be increased by 25 percent."[17] Id. , subd. 5.
Whether an award of penalties is appropriate under Minn. Stat. § 176.225 is a fact question. Zwieg v. Pope Douglas Solid Waste , 704 N.W.2d 752, 758 (Minn. 2005) ; see also Fishback v. Am. Steel & Indus. Supply , 77 Minn. Workers' Comp. Dec. 269, 282 (WCCA 2017). We do not disturb the findings of a compensation judge that have been affirmed by the WCCA "unless the findings are manifestly contrary to the evidence or unless the evidence clearly requires reasonable minds to adopt a contrary conclusion." Pelowski v. K-Mart Corp. , 627 N.W.2d 89, 92 (Minn. 2001).
The heirs argue that "Auto-Owners did everything in its power to hold onto the underpayment for as long as it could," and thereby created "an unreasonable and vexatious delay of payment." Specifically, the heirs claim that the following delays were unreasonable:
• Auto-Owners did not take any action to determine the effect of Ekdahl and Hartwig for a year after the decisions were filed.
• After being contacted by the Department, Auto-Owners took 45 days to audit its files and determine that Oseland may have been underpaid.
• Auto-Owners did not attempt to follow up with the Department for 7 months after the Department failed to respond to its correspondence even though Auto-Owners knew that Oseland may have been underpaid.
• It took Auto-Owners nearly 3 months to have a forensic accountant verify the amount of amount of underpayment owed to Oseland.
• After the heirs obtained a decree of descent, Auto-Owners did not pay the underpayments it admitted were due for 4 months because it insisted on executing a stipulation for settlement.
*756 After reviewing the record, the compensation judge determined that penalties were not warranted. The compensation judge found that Auto-Owners "cooperated with [the Department] to identify files that needed auditing, took reasonable steps to have an audit performed, and when it knew exactly what to do and how to proceed, it took appropriate steps to see that the payment was made."
The compensation judge acknowledged that there were two long "passage[s] of time" before the claim was paid but determined that both were justified by good cause. First, the compensation judge determined that the 7-month interval while Auto-Owners awaited a response from the Department to its letter requesting guidance was excusable because Auto-Owners reasonably believed that the Department would follow up if any additional action needed to be taken. Second, the compensation judge found that the time period from September 2016 to June 2017 when Auto-Owners admitted it owed approximately $ 160,000 in underpaid benefits but did not pay the heirs was justified by Auto-Owners' need to obtain the estate information. On the whole, the compensation judge found that Auto-Owner's "conduct in this matter was reasonable and appropriate, and does not warrant penalties."
The WCCA affirmed, finding that "[t]he compensation judge's determination [on] this issue is supported by substantial evidence." We agree.
Although there were certainly delays between the date Ekdahl and Hartwig were decided and the date Auto-Owners tendered the underpaid benefits to the heirs, none of these delays rises to the level of unreasonable, vexatious, or inexcusable. See, e.g. , Webster's Third New International Dictionary 2548 (2002) (defining vexatious as "lacking justification and intended to harass"); The American Heritage Dictionary of the English Language 898 (5th ed. 2011) (defining inexcusable as "[i]mpossible to excuse or justify; unpardonable"). Nothing in the record leaves the impression that Auto-Owners behaved with anything less than good faith in paying the heirs. The record shows that Auto-Owners attempted to pay the heirs expeditiously while also responsibly protecting its interests-for example, by having a forensic accountant conduct an independent review of its records. Accordingly, we agree with the WCCA that the compensation judge's penalty determination is supported by substantial evidence and affirm that determination.
III.
Finally, we must decide whether the heirs' cost in obtaining a decree of descent is a taxable expense under the Workers' Compensation Act. The Act provides that the commissioner, compensation judge, or the WCCA "on cases before the court, may award the prevailing party reimbursement for actual and necessary disbursements."[18] Minn. Stat. § 176.511, subd. 2 (2018). The heirs claim that the $ 2,000 they incurred in obtaining a decree of descent, while "somewhat unusual in a workers' compensation case," was necessary to prove that they were Oseland's *757 legal heirs and is, therefore, a taxable expense.
According to the WCCA, the decree of descent was not a taxable expense because it had nothing to do with the litigation. In other words, even if there had not been litigation in this matter, "the employee's heirs would still have had to probate a will from the employee or obtain a decree of descent in order to receive the benefits to which the employee had been entitled." Expenses incurred in "verifying a right to inherit is a condition precedent to the receipt of benefits," the WCCA concluded, not a taxable disbursement. We agree.
In this case, the heirs' expenses incurred in securing the decree of descent were not "necessary" to the litigation. Minn. Stat. § 176.511, subd. 2. The litigation before the compensation judge was about how much Auto-Owners owed on Oseland's claim, not to whom the money was owed. Because the expenses were unnecessary, we affirm the WCCA's decision that the heirs are not entitled to taxable disbursements.
CONCLUSION
For the foregoing reasons, we affirm in part, reverse in part, and remand to the compensation judge for further proceedings regarding the amount of interest owed.
Affirmed in part, reversed in part, and remanded.

See, e.g. , Adamski v. Kenneth Setterholm's Farm , 58 Minn. Workers' Comp. Dec. 119, 121 (WCCA 1998).

Specifically, Ekdahl and Hartwig interpreted Minn. Stat. § 176.101, subd. 4 (2018), which has remained substantively the same in all relevant aspects since Oseland's injury in 1980. See Ekdahl , 851 N.W.2d at 876-78 ; Hartwig , 852 N.W.2d at 253. The statute requires that once $ 25,000 in permanent total disability benefits are paid "the amount of the weekly compensation benefits being paid by the employer shall be reduced by the amount of any disability benefits being paid by any government disability benefit program." Minn. Stat. § 176.101, subd. 4. In addition, the statute states that the offset "shall also apply to any old age and survivor insurance benefits." Id. The WCCA had interpreted "old age and survivor insurance benefits" to include public retirement benefits, see Ekdahl v. Indep. Sch. Dist. # 213 , No. WC13-5587, 2013 WL 7017760, at *2-3 (Minn. WCCA Dec. 24, 2013), rev'd , 851 N.W.2d 874 (Minn. 2014) (summarizing the WCCA's jurisprudence), but we held in Ekdahl and Hartwig that the term refers only to federal social security benefits, Ekdahl , 851 N.W.2d at 878 ; Hartwig , 852 N.W.2d at 253.

A decree of descent is a court order that distributes the real or personal property, or any interest therein, of a deceased person. See Minn. Stat. § 525.31 (2018). Any interested party may obtain a decree of descent if the decedent has been dead for more than 3 years and no probate proceeding has been commenced in any state. Id.

Initially, the WCCA vacated the compensation judge's order and remanded the case to allow the judge to consider legislation enacted after Ekdahl and Hartwig . See Minn. Stat. § 176.1292 (2018). But the parties filed a joint motion for reconsideration, which the WCCA granted.

Under Minn. Stat. § 176.471, subd. 1 (2018), a party may have a WCCA decision reviewed by our court on the grounds that (1) the WCCA decision does not conform with the Workers' Compensation Act; (2) the WCCA committed an error of law; or (3) the WCCA's findings of fact are not supported by substantial evidence.

See, e.g. , Minn. Stat. § 176.221, subd. 7 (1978) (8 percent per annum); Minn. Stat. § 176.221, subd. 7 (1984) (8 percent per annum or the rate set by Minn. Stat. § 549.09, subd. 1 (1984), whichever is greater); Minn. Stat. § 176.221, subd. 7 (1996) (the rate set by Minn. Stat. § 549.09, subd. 1 (1996) ).

Act of May 27, 1977, ch. 342, § 21, 1977 Minn. Laws 712, 712 (codified at Minn. Stat. § 176.221, subd. 7 (1978) ).

Although the parties dispute which version of § 176.221, subd. 7, applies for purposes of the applicable interest rate, all iterations of the subdivision require interest for payments "not made when due."

Judge Quinn, dissenting in part from the WCCA's decision, endorsed the same due date. See Oseland , 2018 WL 4377144, at *9.

Auto-Owners' arguments about its justified reliance on WCCA precedent are not relevant to an interest determination but are relevant when we consider whether a judicial decision should have retroactive effect. Under that analysis, we consider (1) whether the decision establishes a new principle of law; (2) whether retroactive application of the new rule will further the rule's purpose; and (3) whether retroactive application could produce substantial inequitable results. See, e.g. , Bendorf v. Comm'r of Pub. Safety , 727 N.W.2d 410, 414 & nn.5-6 (Minn. 2007) ; Hoff v. Kempton , 317 N.W.2d 361, 363-64 (Minn. 1982). But Auto-Owners has already conceded that Ekdahl and Hartwig have retroactive effect, and it paid the heirs accordingly. Any arguments about inequity and reliance are too little, too late. Interest is not a punishment, General Mills, Inc. v. State , 303 Minn. 66, 226 N.W.2d 296, 299 (Minn. 1975), and " 'goes with the principal, as the fruit with the tree.' " Bourdeaux v. Gilbert Motor Co. , 220 Minn. 538, 20 N.W.2d 393, 396 (Minn. 1945) (quoting United States v. Proctor , 286 F. 272, 273 (S.D. Tex. 1922) ).

Auto-Owners also argues that no interest should accrue until after the stipulation for settlement was executed. We are not persuaded. The stipulation itself provides that claims relating to interest are preserved for further litigation.

Because the WCCA's due-date determination contravenes the plain language of Minn. Stat. § 176.1292, we need not evaluate the three-part test the WCCA majority articulated.

Specifically, section 176.1292 allows insurers to avoid repaying the Special Compensation Fund for supplementary-benefit reimbursements and increased assessments that they would otherwise owe. Id. , subds. 2-4. These obligations are created by the statutory scheme surrounding the Special Compensation Fund. All workers' compensation insurers are required to pay assessments to the Special Compensation Fund based on the proportion of benefits they distribute compared to other insurers. See Minn. Stat. § 176.129, subd. 2a (2018). The Special Compensation Fund then uses these assessments to pay supplementary benefits, among other payments. The supplementary benefits statute was repealed in 1995, but the Fund continues to administer grandfathered-in claims. See Sundby v. City of St. Peter , 693 N.W.2d 206, 209 n.2 (Minn. 2005) ; Minnesota Workers' Compensation Deskbook § 13.4, at 13-9 (Jay T. Hartman & Thomas D. Mottaz eds., 2d ed. 1997) (explaining that the Special Compensation Fund has taken the position that the repeal of the supplementary benefits statute does not have retroactive effect, and, therefore, the Fund reimburses supplementary benefits for injuries occurring before the repeal date). For grandfathered-in claims, supplementary benefits arise when an insurer offsets an employee's permanent total disability benefits and that offset causes the total amount of benefits the employee receives to fall below a statutory floor. See Minn. Stat. § 176.132, subd. 2 (1994). The insurer is required to pay the employee the statutory minimum, and the Special Compensation Fund then reimburses the insurer for the difference between the statutory floor and amount of extra offset the insurer was entitled to take. Id. , subd. 3. The amount the Special Compensation Fund reimburses insurers is called "supplementary benefits." Accordingly, if Ekdahl and Hartwig have retroactive effect, insurers owe money to two parties: (1) any employees that they underpaid and (2) the Special Compensation Fund for any supplementary-benefit reimbursements that they improperly received, as well as additional assessments that should have been paid on benefits withheld. Section 176.1292 incentivizes insurers to quickly pay amounts owed under this first category by forgiving amounts owed under the second.

See supra note 7.

Decisions from other jurisdictions follow this rule as well. See 13 Arthur Larson, Lex K. Larson & Thomas A. Robinson, Larson's Workers' Compensation Law § 134.04[1] (2018) ("If the interest rate changes, the rate applied is usually the rate in effect at the time interest is assessed, rather than the rate in effect at the time of injury."); see also Myers v. Carr Constr. Co. , 387 So. 2d 417, 418 (Fla. Dist. Ct. App. 1980) (applying the interest rate in effect at the date the "delinquencies accru[ed]"); Stovall v. Couch , 658 S.W.2d 437, 438 (Ky. Ct. App. 1983) (same); Selk v. Detroit Plastic Prods. , 419 Mich. 32, 348 N.W.2d 652, 653 (Mich. 1984) (holding that the applicable interest rate is the one in effect at the time the compensation is due); First Nat'l Bank of Belleville v. Paul Hughes Trucking Co. , 645 P.2d 1054, 1055 (Okla. Civ. App. 1982) (using the interest rate in effect at the date of the compensation award-because Oklahoma's statute allowed only post-judgment interest-instead of the date of the employee's death); Jeannette Foods, Inc. v. Workmen's Comp. Appeal Bd. , 39 Pa.Cmwlth. 107, 394 A.2d 1309, 1310 (Pa. Commw. Ct. 1978) ("[T]he 10 percent rate of interest contained in ... the Act applies to all compensation payments which accrue after the effective date of the ... Act regardless of the date on which the underlying injury occurred.").

In addition, the heirs argue that applying the interest statute in effect on the date of the underpayment unconstitutionally impairs their contractual rights-inasmuch as "workers' compensation benefits are essentially a contract between the employee and the employer." But the heirs did not raise this argument below. Accordingly, we decline to address it. See, e.g. , Dykes v. Sukup Mfg. Co. , 781 N.W.2d 578, 584 n.2 (Minn. 2010) ("Generally, issues not presented to the trial court may not be raised for the first time on appeal.").

Auto-Owners argues that the heirs' claim under subdivision 5 is not properly before us because the heirs listed only subdivision 1 in their notice of appeal to the WCCA. Because the heirs' claim for penalties fails on the merits under either subdivision, we need not decide this issue.

We have never considered what standard of review should apply when reviewing a claim under Minn. Stat. § 176.511. The statute's use of "may" suggests that an abuse of discretion standard is appropriate. See Minn. Stat. § 645.44, subd. 15 (2018) (" 'May' is permissive."); State v. Whelan , 291 Minn. 83, 189 N.W.2d 170, 174 (Minn. 1971) (concluding that the statute at issue "permits, but does not require, the trial court in the exercise of its discretion to allow depositions of witnesses to be taken" because it used "may"). But because the heirs' claim for taxable disbursements fails under either an abuse of discretion standard or a de novo review, we leave this issue for another day.